NICK W. FRENDREIS *et al.*, Plaintiffs-Appellants, *v.* FINANCIAL CONCEPTS, LTD., Defendant-Appellee.

First District (2nd Division)    No. 81-1503

Opinion filed May 11, 1982.—Rehearing denied June 10, 1982.

.Bradley, McMurray, Black & Snyder, of Chicago (Michael A. Snyder, of counsel), for appellants.

Fohrman, Lurie, Sklar & Simon, Ltd., of Chicago (Paul Cottrell, of counsel), for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs Nick and Bernice Frendreis brought suit against five defendants to rescind the purchase of a note. The defendants are Financial Concepts, Ltd. (the seller of the note), Charles Knapp (a salesman employed by Financial Concepts), Sterling Enterprises, Inc. (the issuer of the note), and John Meatte and Kenneth Kortas (officers of Sterling). Plaintiffs brought this rescission action pursuant to section 13 of the Illinois Securities Law of 1953 (the Act). (Ill. Rev. Stat. 1977, ch. 121½, par. 137.13.) Section 13 of the Act provides that notice of an election to rescind the purchase of a security must be given within six months of the time the purchaser acquires knowledge that the sale is voidable under the Act. (Ill. Rev. Stat. 1977, ch. 121½, par. 137.13B.) Defendant Financial Concepts moved for summary judgment, contending that plaintiffs had not given notice of rescission within the six-month period specified in the statute. The trial court granted the motion. Plaintiffs appeal.[1]

The note in question is a $7,000 promissory note issued by Sterling Enterprises. The face of the note, in prominent typeface, bears the message, "These notes have not been registered under either the Federal or Illinois securities acts and are being sold pursuant to exceptions

---

[1] Sterling, Meatte and Kortas did not appear in the trial court. Default judgment was entered against those defendants. Knapp did not join in the motion for summary judgment and is not a party to the instant appeal.

therein." Plaintiffs purchased the note on August 26, 1975. By June of 1976, Sterling had defaulted on interest payments which, by the terms of the note, were to be made monthly. In June 1977, plaintiffs wrote to the Illinois Secretary of State. In July 1977, a securities investigator for the Secretary of State wrote plaintiffs and requested more information on the transaction. Plaintiffs provided this information. On October 11, 1977, the Secretary of State sent plaintiffs a notice of an impending action. This notice is central to the issue of plaintiffs' knowledge of the voidability of the purchase of the note so the October 11 communication is here related in some detail. That communication consisted of a cover letter and a copy of a notice sent to Financial Concepts, Charles Knapp, and Sterling Enterprises (designated Respondents). The notice informed the respondents of a hearing to determine whether the respondents should be permanently prohibited from selling Sterling's unregistered securities. The notice went on to state the grounds for the proposed action: (a) Sterling had issued a series of notes; (b) Financial Concepts and Knapp had sold one of these notes to the Frendreises; (c) the notes were not registered and were not exempt from registration, in violation of section 5 of the Act; and (d) Financial Concepts and Knapp were not registered as a dealer and a salesperson, respectively, in violation of section 8 of the Act. See Ill. Rev. Stat. 1977, ch. 121½, pars. 137.5, 137.8.

On October 19, 1977, plaintiffs first contacted their attorney. The attorney was initially engaged to collect the value of the note from Sterling Enterprises. Within a few days of plaintiffs' first conversation with their attorney, they provided him with all documents relevant to the note, including the October 11 notice from the Secretary of State. The Secretary's hearing was held on December 12 and 19, 1977, and on January 9, 1978. On March 20, 1978, the hearing officer issued his finding that all three respondents had violated the Act. On April 19, 1978, the Secretary of State again wrote plaintiffs. This letter included a copy of the hearing officer's findings and specifically advised plaintiffs of their right to rescind the purchase of the unregistered note. On July 13, 1978, plaintiffs' attorney mailed to all five defendants herein a notice of intent to rescind the purchase. This litigation followed.

In granting summary judgment for defendant Financial Concepts, the trial court found that plaintiffs had notice in October 1977 of the voidability of the sale. This was more than six months prior to plaintiffs' notice (on July 13, 1978) of intent to rescind, so the trial court found that plaintiffs' action was barred as a matter of law by section 13 of the Act. That section provides:

§13. Civil remedies. A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section;

\* \* \*

B. Notice of any election provided for in subsection A of this Section shall be given by the purchaser, within 6 months after the purchaser shall have knowledge that the sale of securities to him is voidable." Ill. Rev. Stat. 1977, ch. 121½, par. 137.13.

■■ The crucial concept in subsection B is "knowledge of voidability." Courts of this State have held that "[k]nowledge that the sale is 'voidable' is a mixed question of fact and law on which a layman is entitled to acquire his first knowledge from an attorney." (*Curtis v. Johnson* (1968), 92 Ill. App. 2d 141, 155, 234 N.E.2d 566.) The legal component of this "mix" is embodied in the questions, "Did the buyer know that the unregistered security was illegal under the Act," and, "Did he know that an illegal sale is voidable?" The knowledge required to answer these questions is not usually possessed by a layman. In *Curtis v. Johnson*, therefore, the court found that the buyer did not acquire knowledge of voidability until he had consulted his attorney. (See 92 Ill. App. 2d 145, 155.) Also relevant, however, is the rule that an attorney's knowledge is imputed to his client. (See *People ex rel. Rogers v. Elrod* (1975), 35 Ill. App. 3d 26, 28, 340 N.E.2d 598.) Thus, in *McPherson v. Hewitt* (1975), 32 Ill. App. 3d 435, 335 N.E.2d 606, the buyers of securities were held to have acquired knowledge of the illegality of the securities transaction when their attorney received information from the Secretary of State that the securities were unregistered. See 32 Ill. App. 3d 435, 442.

In the instant case, Financial Concepts admits that the plaintiffs, had they not consulted an attorney, would have had no knowledge of voidability until receipt of the Secretary of State's April 1978 letter which unequivocally advised that the sale was voidable. Financial Concepts maintains that plaintiffs' attorney, on the other hand, did not need to wait for the final word from the Secretary of State since the attorney knew or should have known of the voidability of the sale from the fact of the Secretary's action to restrain allegedly illegal trading by Financial Concepts. Plaintiffs point out that Financial Concepts actively contested the Secretary's charge of illegal trading. From this, plaintiffs conclude that their attorney could not have acquired certain knowledge of the illegality (and voidability) of the transaction until the Secretary's action concluded with a finding of a violation of the Act.

The issue, thus narrowed, appears to be a question of first impression in this State: when a buyer of securities acquires knowledge (through his attorney) that the legality of the securities is being challenged, does that knowledge (given the related knowledge that an illegal sale is voidable) start the running of the six-month period provided in section 13B of the Act? Put another way, is the buyer of challenged securities permitted to

defer his own action until the illegality of the sale has been determined in a contested quasi-judicial proceeding?

Financial Concepts contends that the *McPherson* case provides an answer to these questions. In *McPherson*, the buyers' attorney wrote to the sellers and demanded proof that the transaction was not fraudulent. He received no reply. The attorney then contacted the Secretary of State and learned that the securities were unregistered. Concluding that the transaction was illegal, the attorney then (six days later) gave the sellers notice of the buyers' intent to rescind the sale. (See *McPherson v. Hewitt* (1975), 32 Ill. App. 3d 435, 438.) The attorney acted to rescind on the bare knowledge that the securities were unregistered. Here, Financial Concepts argues, plaintiffs' attorney was required to act because he knew not only that the security was unregistered but also that the Secretary of State deemed the transaction illegal. The signal distinction between *McPherson* and the instant case, however, is that Financial Concepts denied it had violated the Act and sought to prove that the security was exempt from registration and the transaction was therefore legal. Parenthetically, we note the inconsistency of Financial Concepts' position. Financial Concepts maintained throughout the Secretary of State's hearing that the security in question was exempt from registration and its sale was legal. In this litigation, however, Financial Concepts insists that plaintiffs' attorney should have known of the illegality of the sale as soon as he learned that the Secretary had charged a securities violation and scheduled a hearing.

Whether the note was exempt from registration is a mixed question of fact and law. Financial Concepts claimed an exemption under section 3L of the Securities Act. That section provides that promissory notes "which arise out of current transactions" and have a maturity period not exceeding nine months are exempt securities. (Ill. Rev. Stat. 1977, ch. 121½, par. 137.3L.) The hearing officer found the claimed exemption inapplicable because the note did not arise out of any "current transaction" between the Frendreises and Sterling. The hearing officer also found that the note exceeded the nine-month maturity limit because the note was renewable at Sterling's option.

■■ We do not here review the findings or recommendations of the hearing officer. We only note that his responsibilities encompassed both the determination of the facts and the interpretation of the Securities Act. We also note that our courts have stated that the Act "is paternalistic in character and should be liberally construed to better protect the public not just from fraud or dishonesty, but also from the incompetence, ignorance and irresponsibility of persons engaging in the business of disposing of securities to the public." (*Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 245, 323 N.E.2d 73; see also *Norville v. Alton Bigtop Restaurant, Inc.* (1974), 22 Ill. App. 3d 273, 284, 317 N.E.2d 384.) A

liberal construction of section 13B requires that the buyer be given sufficient time *after* the illegality of securities transaction has been determined to elect to void the sale. We therefore hold·that when the seller or issuer of challenged securities is defending the legality of the transaction, the buyer does not acquire knowledge of voidability (for purposes of the six-month rule) until the illegality of the transaction has been established in a judicial or quasi-judicial proceeding.

■ Our conclusion is supported by cases describing the nature of the six-month rule. In *Gowdy v. Richter* (1974), 20 Ill. App. 3d 514, 523, 314 N.E.2d 549, the court held that the six-month rule is not a statute of limitations but is an equitable feature designed to protect a seller from stale claims. The Act provides a separate three-year statute of limitations for civil remedies under the Act. (Ill. Rev. Stat. 1977, ch. 121½, par. 137.13D.) In *Martin v. Orvis Brothers & Co.*, the defendant accused the plaintiff of conduct which, if true, would constitute just the sort of "stale claim" that the six-month rule was intended to prevent. Orvis Brothers' salesman testified that he told the plaintiff (Martin) that he could rescind the purchase of certain unregistered stock. The salesman testified that Martin indicated he would not rescind because the stock had risen in value above his purchase price. (See 25 Ill. App. 3d 238, 243-44.) Ten months later, when the stock's value had plummeted, Martin gave notice of intent to rescind the sale.[2] (See 25 Ill. App. 3d 238, 241-42.) In *Martin*, this court stated that the purpose of the six-month rule is to prevent a buyer who has sufficient knowledge of the availability of a remedy from waiting out the full three-year statute of limitations before deciding whether to rescind the purchase. (*Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 246.) The instant case does not present such a situation.

■ Given that the six-month rule is an equitable aspect of the statute, we find no inequity in leaving Financial Concepts vulnerable to a demand for rescission of a transaction when the demand was made within six months of the time that the transaction was adjudicated illegal. We therefore hold that the trial court erred in granting summary judgment to Financial Concepts. The judgment should be reversed and the cause remanded for further proceedings in plaintiffs' action for rescission.

Reversed and remanded.

DOWNING and PERLIN, JJ., concur.

---

[2] These allegations regarding Martin's conduct were not passed upon by the trial court in *Martin*. The case was remanded for a factual determination of when the plaintiff acquired knowledge of the stock sales' voidability. See *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 252.