**Ralph PUCCI and Bruce Johnson, Plaintiffs,**

v.

**Louis SANTI, Gerald Litwin, Clapp & Eisenberg, Defendants.**

No. 87 C 6860.

United States District Court, N.D. Illinois, E.D.

April 17, 1989.

---

William M. Phelan and Thomas F. Burke, Phelan & Doyle, Chicago, Ill., for plaintiffs.

John J. Held, McAndrews, Held & Malloy, Ltd., Chicago, Ill., and Ronald R. Wzwrzyn and James T. McKeown, Foley and Lardner, Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiffs Ralph Pucci and Bruce Johnson have sued Emil Stavriotis, Louis Santi, Gerald Litwin and the law firm Clapp and Eisenberg for violating § 10(b) of the Securities Exchange Act of 1983 ("§ 10(b)"), 15 U.S.C. § 78j(b), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and Illinois statutory and common law. On December 7, 1988, this court dismissed the plaintiffs' twelve-count first amended complaint, ruling that the two federal counts failed to state claims upon which relief could be granted and that the state law claims should be brought in state court. *Pucci v. Stavriotis*, 86 C 6860, slip op. (N.D.Ill.Dec. 7, 1988) *("Pucci I")*. The plaintiffs have now moved to reconsider this ruling. For the reasons set forth below, the motion to reconsider will be granted, the December 7 ruling vacated, and the motion to dismiss granted in part and denied in part.

## BACKGROUND

The allegations of the complaint are as follows. In early 1981, Stavriotis and Santi, aided and abetted by Litwin, entered into a conspiracy to sell worthless interests in a coal mining venture. At the time, Santi was the major shareholder of Minerals Development Company, Inc. ("MDC") and Stavriotis was the major shareholder of Exploring Resources, Inc. ("ERI"). Litwin was a shareholder, officer and director of ERI, as well as a member of the law firm Clapp and Eisenberg.

Pursuant to the conspiracy, Stavriotis established JPR Associates ("JPR") as a limited partnership with ERI serving as the general partner. On February 26, 1981 JPR issued a private placement memorandum to numerous individuals, including the plaintiffs. In this memorandum, and in subsequent written documents and oral

statements, Stavriotis and Litwin represented to the plaintiffs that JPR had title to properties containing substantial coal reserves, and that ERI, with Litwin acting as attorney for the limited partnership, would enter into arms length transactions with MDC for the purpose of hiring MDC to undertake mining and development operations on JPR's properties. Stavriotis also represented that, as part of the arrangement, MDC would transfer other properties containing additional coal reserves if JPR's properties did not contain sufficient reserves recoverable on an economically feasible basis. In April, 1981, each plaintiff invested $60,000 in JPR.

From the outset, Stavriotis, Santi and Litwin knew that neither JPR nor MDC owned properties with substantial coal reserves, that the negotiations between MDC and JPR were a sham, that MDC had been insolvent since 1980, and that the plaintiffs' interests in JPR were worthless. Nevertheless, from April 1981 through at least September 1986, Stavriotis and Santi continued to advise the plaintiffs that exploration, engineering and development work was being conducted, and that MDC was making production payments to JPR from the purported coal production on JPR properties. For his part, Litwin represented that he was serving as the attorney for JPR, but failed to disclose the fraud to the plaintiffs.

The complaint further alleges that the plaintiffs first discovered the wrongdoing on September 3, 1986 when one of them, Mr. Pucci, was deposed in connection with two lawsuits filed against the defendants in a federal court in Wisconsin. The plaintiffs brought this lawsuit in August, 1987.

The original complaint named as defendants Stavriotis, Santi, Litwin, and Clapp and Eisenberg, and contained 17 counts: two federal claims and 15 state law claims. Because the plaintiffs as well as Stavriotis were Illinois citizens, the state law claims were predicated solely on pendent jurisdiction.

Stavriotis, however, soon filed for bankruptcy. The plaintiffs, rather than waiting for the automatic bankruptcy stay to be lifted, chose to dismiss Stavriotis from the case, filing a first amended complaint which listed Stavriotis as a defendant in the heading, and repeatedly referred to him in the allegations, but did not name him as a defendant. The plaintiffs also sought, and this court entered, a default judgment against defendant Santi. Thus, only Gerald Litwin and Clapp and Eisenberg remain in the case. Of the twelve counts in the amended complaint, eleven name them.

Shortly after the amended complaint was filed, the defendants moved to dismiss these claims on a variety of grounds, the most important being that the statute of limitations had run on all claims and that the plaintiffs had failed to allege facts justifying an extension of the limitations period. In *Pucci I*, this court agreed with the defendants that the § 10(b) claim was time-barred. As for the RICO claim, the court did not reach the limitations issue, instead dismissing the claim because the plaintiffs had failed to plead a pattern of racketeering. The court then dismissed the remaining claims on the grounds that they were state law claims and, with the federal claims gone, should be pursued in state court.

The plaintiffs have moved for reconsideration of that ruling on two grounds. First, they assert that because the only non-diverse defendant in this case has been dismissed, the court now has diversity jurisdiction over the state law claims. They then contend that this court erred in finding that the § 10(b) claim is time-barred.

## DISCUSSION

### The State Law Claims

■ Because the original complaint named Stavriotis as a defendant, and the amended complaint listed him in the heading and repeatedly referred to him as an integral part of the alleged conspiracy, this court took him still to be a defendant in this case. The record, on the contrary, reflects that the plaintiffs dismissed him from the case on September 10, 1987. Complete diversity thus exists between the plaintiffs and the remaining defendants.

Since the defendants concede that Stavriotis is not an indispensable party here, this case may proceed in federal court.

This ruling does not mean, of course, that all of the state law claims should be reinstated. The defendants have moved to dismiss them on their merits, and some of their arguments prove more meritorious than some of the claims.

a. Counts III and IV

■ Counts III and IV are predicated on Illinois securities law, Ill.Rev.Stat. ch. 121½, ¶¶ 137.5, 137.8. They have as their limitations period Ill.Rev.Stat. ch. 121½, ¶ 137.13 D. Pursuant to amendments effective January 1, 1986, the statute contains both a three-year limitations period and a five-year statute of repose.[1] The comments to the amended statute make clear that the five-year repose period overrides the general Illinois fraudulent concealment statute, Ill.Rev.Stat. ch. 110, ¶ 13–215.[2] *See Zahorik v. Smith Barney, Harris Upham & Co., Inc.,* 664 F.Supp. 309, 312 (N.D.Ill.1987). Since the plaintiffs invested in JPR in April 1981, but did not file suit until August 1987, the defendants argued in their original motion that the claims were time-barred.

In their response, the plaintiffs did not dispute that the amended version of the statute, with its five-year repose period, applies to these claims. *See Pucci I,* slip op. at 3. n. 1. As discussed at length below, they did argue that the *federal* se-

curities claims could be tolled under federal tolling principles despite the state repose period, but that argument obviously has no bearing on the state securities claims. *See Hemmings v. Barian,* 822 F.2d 688, 690 (7th Cir.1987). The plaintiffs thus avoided having these state law claims dismissed as time-barred only because the court dismissed them on jurisdictional grounds.

Now that the state claims are back before the court, the arguments (or lack thereof) in the original briefs would seem to mandate their dismissal. However, in their motion to reconsider, the plaintiffs have raised one argument which, although they addressed it only to the § 10(b) claim, could save their state securities claims as well.

To understand how, a brief digression is necessary. In dismissing the § 10(b) claim, this court held that the Seventh Circuit's ruling in *Norris v. Wirtz,* 818 F.2d 1329, 1331 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987), foreshadowed a break in § 10(b) limitations analysis. Prior to *Norris,* the Seventh Circuit had consistently held that, although federal courts must adopt analogous state limitations periods in § 10(b) cases, federal tolling principles were available to stay the running of the period. *See, e.g., Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000 (7th Cir.1984). However, in *Norris,* and then again in *Barian,* the Seventh Circuit suggested that the federal courts had gone astray in adopting state law limitations

---

1. Paragraph 137.13 D provides:

 No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after three years from the date of sale, provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation ... which is the basis for the action, the three-year period provided herein shall begin to run upon the earlier of (1) the date upon which the party bringing such action has actual knowledge of the alleged violation of this Act, or (2) the date upon which the party bringing such action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act; but in no event shall the period of limitation so extended be more than

 two years beyond the expiration of the three-year period otherwise applicable.

2. Paragraph 13–215 provides that:

 if a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

 The comments to amended ¶ 137.13 D, however, specifically state that the statute was designed to cover cases involving fraudulent concealment, providing for an extension of the three-year period by two years, but no more, in such cases. Were ¶ 137.13 D governed by ¶ 13–215, of course, the five-year repose period would be meaningless. That cannot be what the Illinois legislature intended.

periods but then employing federal tolling rules. Although *Barian* said so only in dicta, and *Norris* proceeded to analyze (but then reject) the federal tolling argument, this court was convinced that these cases signalled a change in the law. Accordingly the court ruled that the plaintiffs could not rely on federal tolling principles to delay the expiration of their § 10(b) claim.

Having determined that state law exclusively would apply, the court then noted that ¶ 137.13 D was the controlling state statute, and that it now contains a five-year repose period. Since the plaintiffs had not contested that, if state law controlled, the amended version of the statute was applicable, the court ruled that the § 10(b) claim was time-barred.

In their motion to reconsider, however, the plaintiffs now have argued that, even assuming that federal tolling no longer applies, the court should not have dismissed the claims. They contend that because the amended version of ¶ 137.13 D shortened the limitations period applicable to their claim—under the old version they (may have) had until September 1989 to file suit —this court should not have automatically applied the new limitations period here.

Although the plaintiffs made this argument only on the § 10(b) claims, it obviously applies as well to those state claims governed by ¶ 137.13 D. The defendants could have responded with some force that the plaintiffs waived this argument by not raising it in the first round of briefs, but because they did not, this court will examine it.

■ The first issue that arises is whether the amendment to ¶ 137.13 D—containing a limitations period of three years and a repose period of five—actually shortened the period applicable to the plaintiffs' claims. Prior to January 1, 1986, the statute of limitation for state law securities claims was three years. If this was an ordinary limitations period, then it could be extended by principles of equitable tolling, and (assuming for now that the plaintiffs adequately have pleaded fraudulent concealment) the plaintiffs' claims still existed when the amended statute adopted its re-

pose period. On the other hand, if the three-year period in the old statute was itself a period of repose, then the plaintiffs' claims died in April 1984, and remain dead now.

Ironically, no one questioned that the three-year period in the old statute could be tolled until the comments to the new statute suggested that the three-year period in the old one might have been "a statute of repose period all along." *Norris v. Wirtz,* 818 F.2d at 1333–34 n. 1 (citing Ill.Rev.Stat. ch. 121½, ¶ 137.13 D (West 1986 Pocket Part)). One court in this district has since stated (albeit in dicta) that fraudulent concealment did not toll old ¶ 137.13 D. *Gutfreund v. Christoph,* 658 F.Supp. 1378, 1383 & n. 9 (N.D.Ill.1987) (Shadur, J.). Another has held precisely the opposite. *Zakorik v. Smith Barney, Harris Upham & Co., Inc.,* 664 F.Supp. 309 (N.D.Ill.1987) (Aspen, J.). Unfortunately, no Illinois court has spoken to this issue. *See Frantzve v. Joseph,* 150 Ill.App.3d 850, 104 Ill.Dec. 133, 502 N.E.2d 396 (1986) (declining to decide equitable tolling argument in case involving ¶ 137.13 D because the plaintiffs had failed to present the theory to the trial court).

The silence of the Illinois courts on ¶ 137.13 D, however, does not mean that Illinois law has nothing to say on this matter. On the contrary, the Illinois courts and legislature have consistently provided for the tolling of limitations periods in the presence of fraudulent concealment, *see, e.g.,* Ill.Rev.Stat. ch. 110, ¶ 13–215; so much so, in fact, that the Seventh Circuit once stated in dicta that equitable tolling did apply to old ¶ 137.13 D. *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123, 128 n. 11 (7th Cir.1972). This suggests that the rule in Illinois is that statutory or common law tolling will apply to a cause of action unless the statute expressly provides otherwise. *See Sommer v. United Savings Life Insurance Co.,* 128 Ill.App.3d 808, 819, 84 Ill.Dec. 77, 471 N.E.2d 606 (1984). Since old ¶ 137.13 D established a three-year limitations period without expressly precluding equitable tolling, this court concludes that

such tolling was available prior to the amendments.

 Of course, to obtain the benefits of the tolling rule, the plaintiffs must adequately plead their entitlement to it. Under federal law, a plaintiff seeking to rely on equitable tolling must show either his own due diligence or the defendant's fraudulent concealment, *see Teamsters Local 282 Pension Trust Fund v. Angelos*, 815 F.2d 452, 456 (7th Cir.1987); *Sperry v. Barggren*, 523 F.2d 708, 711 (7th Cir.1975); but under Illinois law, he must show both, *see Zagar v. Health & Hospitals Governing Commission of Cook County*, 83 Ill. App.3d 894, 898, 39 Ill.Dec. 112, 404 N.E.2d 496 (1980). The defendants maintain the plaintiffs have alleged neither, and although the plaintiffs insist that they have pleaded Litwin's fraudulent concealment, they concede that they have not alleged their own due diligence. This concession would seem to doom their state law claims. For a number of reasons it does not.

First, it is worth noting that the defendants relied on federal cases alone in arguing that the plaintiffs had not pleaded facts supporting equitable tolling. Thus, the plaintiffs may have been lulled into thinking that they had no need to argue due diligence in their briefs. This fact is significant because in *Reichelt v. Urban Investment and Development Company*, 577 F.Supp. 971 (N.D.Ill.1984), the court held that a plaintiff adequately pleads equitable tolling under Illinois law so long as he pleads facts showing fraudulent concealment and "[t]here is no indication in the [complaint] that [the plaintiff] failed to exercise reasonable diligence." *Id.* at 975. Had the defendants made clear that they were relying on Illinois tolling cases in seeking dismissal of the state law securities claims, the plaintiffs might well have chosen not to concede on the due diligence prong and argued instead that their complaint sufficed to get them beyond the pleading stage.

 Moreover, even if the plaintiffs have not properly pleaded due diligence, there is another principle of Illinois law that does the trick for them, both in excusing this omission and in establishing the adequacy of their fraudulent concealment allegations. Under Illinois law, where a fiduciary with a duty to disclose engages in a fraudulent scheme to hide wrongdoing, that fraudulent scheme tolls the running of the limitations period even in the absence of affirmative misrepresentations, *see Leffler v. Engler, Zoghlin & Mann, Ltd.*, 157 Ill.App.3d 718, 722–23, 109 Ill.Dec. 950, 510 N.E.2d 1018 (1987), and in the absence of due diligence by the plaintiff, *see Prueter v. Bork*, 105 Ill.App.3d 1003, 1007, 61 Ill. Dec. 620, 435 N.E.2d 109 (1982).

 Here, the defendants repeatedly urge that the only allegations against Litwin are that he remained silent about the fraud. But they fail even to acknowledge the allegations that Litwin held himself out to be the lawyer for the limited partners.[3] Illinois case law indicates that a lawyer has a fiduciary duty of disclosure to his clients, *see Gary–Wheaton Bank v. Burt*, 104 Ill. App.3d 767, 774, 60 Ill.Dec. 518, 433 N.E.2d 315 (1982); 4 I.L.P. Attorneys & Counselors § 104, and at the pleading stage this court must assume that he did. Since the plaintiffs have alleged that Litwin intentionally failed to disclose wrongdoing to them, they have sufficiently pleaded equitable tolling in their state law claims.

 By establishing their right to toll the old version of ¶ 137.13 D, the plaintiffs have shown that their state securities claims remained viable when the amended version took effect in 1986. As noted above, however, the new version contains a period of repose which cannot be tolled and which expired before the plaintiffs filed their suit. Thus, the court must determine the effect of the ¶ 137.13 D amendments on the plaintiffs' claims.

Under established Illinois law:

---

3. Although the defendants seem to argue at various points in their briefs that Litwin's role as attorney for the JPR limited partnership did not make him the attorney for the limited partners, they cite no support for this position and, as set forth more fully below in the discussion of the breach of fiduciary duty claim, this court rejects it.

924

[A]n amendment to a limitation statute shortening the period within which an action must be filed will be applied retroactively to actions not as yet commenced, *provided there is a reasonable time after the effective date of the amendment within which to bring the action.*

*Hupp v. Gray,* 73 Ill.2d 78, 83, 22 Ill.Dec. 513, 382 N.E.2d 1211 (1978) (emphasis added). "The period which is scrutinized by the courts for its reasonableness is that between the statute's effective date and the date on which the pre-existing cause of action would be barred under the new statute." *Moore v. Jackson Park Hospital,* 95 Ill.2d 223, 230, 69 Ill.Dec. 191, 447 N.E.2d 408 (1983). "If under the new statute a reasonable time remains, the new period can be applied without more; if a reasonable period of time would not remain, then one will be allowed." *Mega v. Holy Cross Hospital,* 111 Ill.2d 416, 420–21, 95 Ill.Dec. 812, 490 N.E.2d 665 (1986).

In this case the period between the date the amendment became effective and the date the plaintiffs' claims would be barred under new ¶ 137.13 D is four months—i.e., from January to April, 1986. If this represents a reasonable time for them to bring suit, then the plaintiffs' claims are time-barred. If it does not, then the court must determine whether 20 months—the length of time between the effective date of the amendments and the date the plaintiffs filed this suit—was reasonable.

Generally, these determinations are questions of fact for the trial court. *See Moore v. Jackson Park Hospital,* 95 Ill.2d at 237, 69 Ill.Dec. 191, 447 N.E.2d 408; *Anderson v. Wagner,* 79 Ill.2d 295, 323, 37 Ill.Dec. 558, 402 N.E.2d 560 (1979); *Leffler v. Engler, Zoghlin & Mann, Ltd.,* 157 Ill.App.3d at 722, 109 Ill.Dec. 950, 510 N.E.2d 1018. But, where the pleadings alone demonstrate that a delay was either reasonable or unreasonable, the court may find it so as a matter of law. *See, e.g., Mega v. Holy Cross Hospital,* 111 Ill.2d at 428, 95 Ill. Dec. 812, 490 N.E.2d 665.

Since the plaintiffs allegedly did not even discover the wrongdoing until September 1986, this court cannot say that the four-month period between January and April was a reasonable time for them to file suit. Although the defendants insist that the plaintiffs' failure to discover their cause of action prior to its expiration date is irrelevant because new ¶ 137.13 D creates a statute of repose, this argument ignores the fact that the old statute contained no repose period.

A statute of limitations requires a plaintiff to exercise due diligence to discover wrongdoing. But a statute of repose requires much more: a plaintiff must use extraordinary diligence in seeking to uncover fraud, for if he does not his claims will be barred. A legislature may impose a statute of repose requiring such extraordinary diligence. But where this statute supersedes a limitations statute, a plaintiff whose cause of action accrued under the latter must be given a reasonable time after the former's effective date in which to discover the fraud and file suit. *See id.* at 420, 95 Ill.Dec. 812, 490 N.E.2d 665. Four months is not a reasonable time under these circumstances. *Ibid. Compare Evans v. Bachman,* 78 Ill.App.3d 1107, 34 Ill.Dec. 439, 398 N.E.2d 114 (1979) (two months remaining in underlying limitations period after plaintiff discovered cause of action is reasonable).

But was the 20–month period between the effective date of new ¶ 137.13 D and the date the plaintiffs finally filed suit reasonable? Because the plaintiffs discovered the alleged wrongdoing nine months into this period, the defendants argue that it was not. *See e.g., Anderson v. Wagner,* 79 Ill.2d at 323, 37 Ill.Dec. 558, 402 N.E.2d 560, *Metayka v. Melia,* 119 Ill.App.3d 221, 74 Ill.Dec. 851, 456 N.E.2d 353 (1983). But this argument ignores the Illinois Supreme Court's rulings in *Mega* and *Costello v. Unarco Industries, Inc.,* 111 Ill.2d 476, 95 Ill.Dec. 822, 490 N.E.2d 675 (1986). In those two cases, the Court established a rule that where a statute of repose replaces a statute of limitations, a plaintiff whose cause of action would not have been barred under the limitations statute has from the effective date of the amendment until the expiration of the repose period to file his

lawsuit. *Costello*, 111 Ill.2d at 486, 95 Ill.Dec. 822, 490 N.E.2d 675 (Clark, C.J., specially concurring). Thus, where a five-year repose period supersedes a limitations period, the plaintiff has five years from the effective date of the former to bring his suit. Since the plaintiffs filed this action well within five years of new ¶ 137.13 D's effective date, their Securities Act claims are timely.

The defendants press three other grounds for the dismissal of the state securities claims. They assert that the claims are barred both because the plaintiffs failed to give notice of their intent to seek recission of the sale within six months of the discovery of the wrongdoing, *see* ¶ 137.13 B, and failed to tender their securities (or in this case their investment contracts) prior to filing this action, *see* ¶ 137.13 A. They also argue that, even if the claims are not barred, Litwin (and therefore Clapp and Eisenberg) cannot be held liable because lawyers are not subject to aider and abettor liability under this statute.

 The first argument misconstrues the notice requirement of ¶ 137.13 B. This paragraph provides that "notice of any election [to rescind] provided for in subsection A of this Section shall be given by the purchaser, within 6 months after the purchaser shall have knowledge that the sale of securities to him is voidable." The Illinois courts have held that "the six-month rule is not a statute of limitations but is an equitable feature designed to protect a seller from state claims." *Frendreis v. Financial Concepts, Ltd.*, 106 Ill. App.3d 438, 441, 62 Ill.Dec. 332, 435 N.E.2d 1304 (1982); *Gowdy v. Richter*, 20 Ill.App. 3d 514, 523, 314 N.E.2d 549 (1974). The period thus begins to run not when the plaintiff has notice of the facts giving rise to his claim, but when he has notice that these facts actually grant him a right to relief. *Frendreis*, 106 Ill.App.3d at 441, 62 Ill.Dec. 332, 435 N.E.2d 1304; *see also Curtis v. Johnson*, 92 Ill.App.2d 141, 145, 234 N.E.2d 566 (1968). Although the plaintiffs here have alleged that they had notice of wrongdoing in September 1986, they have not alleged that they knew they had a cause of action under the Securities Act at that time. Accordingly, their claims cannot be dismissed on this ground.

 The defendants next argue that the Illinois securities laws claims must be dismissed because the plaintiffs have neither tendered their investment contract to the defendants, nor alleged that they will do so in the future. Although there is some support in federal cases for the proposition that a Securities Act plaintiff must allege that he has tendered or will tender his securities, *see e.g., Nelson v. National Republic Bank of Chicago*, Fed.Sec.L.Rep. (CCH) ¶ 91,481 at 98,401 (N.D.Ill. April 17, 1984), a more recent Illinois case holds that such allegations are not necessary and that the plaintiff may tender his securities prior to or during trial. *Boldon v. Chiappa*, 140 Ill.App.3d 913, 920–21, 95 Ill.Dec. 54, 489 N.E.2d 6 (1986). Accordingly, this argument for dismissal fails as well.

 The defendants' final argument for dismissal of Counts III and IV is that, even if these claims are not barred on technical grounds, they fail to state claims against Litwin and Clapp and Eisenberg because lawyers acting in a legal capacity cannot be held liable under the Illinois Securities Act. *See Excalibur Oil, Inc. v. Sullivan*, 616 F.Supp. 458, 466 (N.D.Ill., 1985); *cf. Gutfeund v. Christoph*, 658 F.Supp. at 1397 (accountants cannot be liable under the Act). Yet, the plain language of ¶ 137.13 A destroys this argument.

Under 137.13 A, liability under the Act for a fraudulent sale of securities extends to:

> [T]he issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesperson who shall have participated or aided in any way in making such sale, and in case such issuer, controlling person, underwriter or dealer is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making such sale.

Litwin was not a director or officer of JPR, but he was an officer and director of ERI, JPR's general partner. Since the defendants do not contest that ERI was a controlling person of JPR, the plaintiffs state a claim against Litwin so long as they allege that he "participated or aided" in ERI's sales of interests in JPR. The fact that he may have done so only in his legal capacity does not exempt him (or Clapp and Eisenberg) from the specific language of the Securities Act. *Compare Gutfreund*, 658 F.Supp. at 1397 (accountant was not an officer or director of any person subject to the Act); *Excalibur*, 616 F.Supp. at 466 (same for attorney). Accordingly, the motion to dismiss Counts III and IV will be denied.

### b. Count V

 Count V alleges a violation of the Illinois Consumer Fraud and Deceptive Practices Act, Ill.Rev.Stat. ch. 121½, ¶¶ 262 et seq. This statute contains a three-year limitations period, Ill.Rev.Stat. ch. 121½, ¶ 270a(e), but this period is subject to equitable tolling. *Sommer v. United Savings Life Insurance Co.*, 128 Ill.App.3d at 819, 84 Ill.Dec. 77, 471 N.E.2d 606. As noted above, the plaintiffs have adequately pleaded equitable tolling under Illinois law, so this claim is not time-barred.

 The defendants, however, have another argument. They contend that Litwin (and hence Clapp and Eisenberg) cannot be held liable under the Consumer Fraud Act because the Act does not apply to lawyers providing legal services. *Frahm v. Urkovich*, 113 Ill.App.3d 580, 69 Ill.Dec. 572, 447 N.E.2d 1007 (1983). The plaintiffs agree that the Act does not apply to lawyers qua lawyers, but insist that it does apply to Litwin because he was acting not only as a lawyer but also as an officer of ERI at the time of the sale.

Obviously, the mere fact that a person has gained admission to the bar does not grant him an exclusion from the Act's proscriptions. But, here, the plaintiffs' argument that they have alleged more than the sort of improper practices exempted from the Act by *Frahm* is belied by their pleadings. In paragraph 9 of their amended complaint they allege that:

> The role of Litwin and Clapp and Eisenberg in the conspiracy during the investment phase and thereafter involved (1) purporting to serve as the plaintiffs' lawyers and legal counselors as attorney for JPR in negotiations with MDC, banks and the Internal Revenue Service, and in drafting limited partnership agreements, subleases, mining and development agreements and other documentation, all of which were designed to give the appearance of legitimacy to the various transactions described below....

Then, in the specific allegations relating to Count V, they allege that "Litwin, as plaintiffs' lawyer, employed a device, scheme and artifice to defraud plaintiffs...." Thus, the plaintiffs' own allegations demonstrate that, with respect to Litwin, they are charging wrongdoing in the provision of legal services. Accordingly, Count V must be dismissed.

### c. Count VI

 Count VI alleges common law fraud and deceit. It is subject to a five-year statute of limitations, Ill.Rev.Stat. ch. 110, ¶ 13–205, but fraudulent concealment tolls the statute until the discovery of the fraud, Ill.Rev.Stat. ch. 110, ¶ 13–215. *See Suslick v. Rothschild Securities Corp.*, 164 Ill.App.3d 589, 115 Ill.Dec. 189, 517 N.E.2d 600 (1987), *appeal granted*, 119 Ill. 2d 575, 119 IllDec. 399, 522 N.E.2d 1258 (1988). Because the plaintiffs have adequately pleaded fraudulent concealment, the statute did not begin to run until September, 1986. The motion to dismiss this count will therefore be denied.

### d. Counts VI, VIII, XI, XII

As the defendants point out, the plaintiffs chose not to respond to the motion to dismiss Counts VII, VIII, XI and XII, implicitly conceding that the defendants' arguments carried the day. The court will therefore dismiss these claims.

### e. Count X

 Count X alleges common law breach of fiduciary duty. It is governed by

the same limitations statutes as Count VI, a five-year period subject to equitable tolling. Therefore, the claim is not time-barred (at least not at the pleading stage).

■ The defendants' alternative argument for dismissal of this count goes to the heart of the case against Litwin. The plaintiffs predicate their breach of fiduciary duty claim on their theory that Litwin was acting as the attorney for the limited partnership and therefore had a fiduciary duty to all of the partners, a duty he breached by misrepresenting and failing to disclose critical facts about the partnership. The defendants call this theory "ridiculous," citing *Gutfreund v. Christoph*, 658 F.Supp. at 1395, for the proposition that "mere preparation of projections and offering materials for a limited partnership venture does not create [a] fiduciary duty to limited partners." Def.Mem. at 26.

Why the defendants chose to cite that case eludes this court. *Gutfreund* held what the defendants say it did, but it has little relevance here. In *Gutfreund* neither of the two defendants charged with breach of fiduciary duty were attorneys, there were no allegations that the plaintiffs had any knowledge of or dealings with the defendants, and the partnership agreement specifically required the plaintiffs to affirm that they had consulted their own attorneys and accountants before entering into the agreement.

Here, the plaintiffs have alleged that Litwin, at the time of the investments and afterwards, held himself out as the attorney for JPR, and the defendants concede that Litwin was indeed the attorney for the limited partnership. Since the plaintiffs

were limited partners, the defendants' argument that Litwin was not their attorney misconstrues the attorney-client relationship in the partnership context. *See Wortham & Van Liew v. Superior Court (Clubb)*, 188 Cal.App.3d 927, 233 Cal.Rptr. 725 (1987) (attorney for partnership represents each partner, limited or general); *accord Roberts v. Heim*, 123 F.R.D. 614 (N.D.Cal.1988). *But see Quintel Corp. v. Citibank, N.A.*, 589 F.Supp. 1235, 1239–42 (S.D.N.Y.1984) (attorney for limited partnership owes duty to the entity, not to individual limited partners); *cf. ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill.App.3d 817, 831, 46 Ill.Dec. 186, 413 N.E.2d 1299 (1980) ("[A]n attorney for a corporate client owes his duty to the corporate entity rather than a particular officer, director, or shareholder.").[4]

Perhaps the defendants are trying to argue that under Illinois law a lawyer-client relationship does not give rise to fiduciary duty absent some additional relationship of trust and confidence. There is some indication to this effect in *Gary–Wheaton Bank v. Burt*, 104 Ill.App.3d at 774, 60 Ill.Dec. 518, 433 N.E.2d 315, although the case is ambiguous on this score. The parties have cited no other Illinois cases on this point, and this court could find none, but it does not matter. For the complaint contains additional allegations that the plaintiffs had a close relationship with Litwin, and that they relied on his assurances that he was acting as their attorney in representing the partnership. These allegations clearly suffice to allege a fiduciary relationship between the plaintiffs and Litwin.[5]

4. *Quintel* analogized a lawyer representing a limited partnership to a lawyer representing a corporation, and then held that the former, like the latter, owes his allegiance to the entity rather than its individual members. *Roberts* pointed out that *Quintel* cited no support for this proposition, and then rejected it, ruling instead that a lawyer for a limited partnership has a fiduciary duty to each partner. But, like *Quintel*, *Roberts* cited no support for this result.

This court could find no Illinois case on point, but the general view appears to be that where an entity is by law an aggregate of individuals, the lawyer has an attorney-client relationship with each of those individuals. *See, e.g., Halver-*

*son v. Convenient Food Mart, Inc.*, 458 F.2d 927, 930 (7th Cir.1972). Since a limited partnership is an aggregation of individual partners, *see* 29 I.L.P. Partnership § 61, this approach supports the plaintiffs' position that Litwin was the plaintiffs' lawyer. *Cf. Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1318 (7th Cir. 1978). If there is law to the contrary in Illinois, the defendants have not provided it.

5. The defendants attempt to undercut these allegations by referring to a deposition of one of the plaintiffs in which he supposedly admitted that he had not even met Litwin until 1986.

*Ibid.* Accordingly, the motion to dismiss the breach of fiduciary duty count will be denied.

*The Federal Claims*

a. Count I

▉ Count I alleges securities fraud in violation of § 10(b). As discussed at length earlier in this ruling, this court dismissed the § 10(b) claim in *Pucci I* on the grounds that federal tolling principles should no longer be allowed to toll the running of the adopted state limitations period, and that, under new ¶ 137.13 D, the claim was barred by the five-year repose period. The plaintiffs have moved for reconsideration of this ruling, arguing that the amended version of ¶ 137.13 D does not bar these claims. Above, this court agreed with that argument as it pertains to the state law claims. However, there is another reason for reconsidering the earlier dismissal of the § 10(b) claim: A number of cases recently discovered by this court (without the assistance of the parties) compel a re-examination of this court's ruling in *Pucci I* that ¶ 137.13 D applies in toto and exclusively to § 10(b) claims.

As already discussed, this court read *Hemmings v. Barian,* 822 F.2d 688, 690 (7th Cir.1987), and *Norris v. Wirtz,* 818 F.2d 1329, 1331 (7th Cir.1987), as giving a green light to district courts to look solely to state law in applying analogous state limitations periods to § 10(b) claims. A more recent Seventh Circuit opinion, however, has turned the signal to yellow.

In *Cange v. Stotler and Co., Inc.,* 826 F.2d 581 (7th Cir.1987), a divided panel of the Court noted the suggestions in *Norris* and *Barian,* and then rejected them, stating that "*Suslick* remains good law." *Id.* at 586 n. 3. This statement was obiter dicta, and could be construed as nothing more than an empirical observation—remember that the suggestion in *Barian* was dicta and in *Norris* ambiguous—but it surely gives this court reason to pause.

While doing so, this court came across Judge Aspen's decision in *Geeting v. Prizant,* 664 F.Supp. 343 (N.D.Ill.1987). That evidence obviously has no place in this

There, the court noted the mixed signals of the Seventh Circuit on the question of equitable tolling in § 10(b) cases, and then undertook an incisive analysis of the effect of a state statute of repose on § 10(b) claims. The court concluded that while a federal court must adopt state limitations periods in § 10(b) actions, the "overriding policies of federal securities laws" mandate that federal courts not adopt state repose periods to bar absolutely § 10(b) claims after a certain period. *Id.* at 349.

Section 10(b) does not contain an express right of action, and it is a little difficult to glean policy out of a cause of action not established by the progenitor of federal statutory law. What's more, to the extent Congress has expressed itself on securities laws limitations periods, it has indicated that it favors periods of repose. *See Norris,* 818 F.2d at 1332 (discussing the express rights of action under the 1934 Securities Exchange Act).

Nevertheless, in the 55 years since § 10(b)'s enactment the federal courts have taken control over § 10(b), and have developed their own federal policy with respect to the implied right of action under this statute. Perhaps Congress has signaled its acquiescence by failing to intervene. In any case, the policy exists, and this court has neither the authority nor the inclination to ignore it.

This federal policy strongly favors the broad availability of § 10(b) to redress securities fraud. By cutting off legitimate claims at a date certain, a statute of repose violates it. For unlike a limitations period subject to tolling, which punishes fraud while encouraging diligence, a statute of repose mandates diligence while rewarding fraud: If a fraudfeasor can keep his fraud hidden long enough, he can escape all liability for his wrongdoing. Accordingly, this court now holds that ¶ 137.13 D's repose period does not apply to § 10(b) claims.

▉ This ruling still leaves one question unanswered. Should federal or state tolling rules determine when ¶ 137.13 D's three-year limitations period begins to run?

motion to dismiss.

The question remains a difficult one in light of *Norris* and *Cange.* Fortunately, this court need not answer it here.

As noted in the discussion of the state securities claims above, Illinois tolling principles are generally more stringent than federal ones, the former always requiring due diligence while the latter requiring either due diligence or fraudulent concealment to toll the statute. However, because there exists an exception under Illinois law for claims against a fiduciary with a duty to disclose, the plaintiffs' failure to plead due diligence does not prevent them from obtaining equitable tolling under Illinois law. That would seem to suffice as well for federal tolling, but *Norris* calls this into question.

*Norris* involved a § 10(b) claim by a trust beneficiary against the trustee. The plaintiff claimed that the limitations period was tolled by the defendant's breach of his fiduciary duty to disclose, citing law to that effect in Illinois. A jury ruled in her favor, but the Seventh Circuit reversed.

The Court first held that even if state law provides that limitations periods are tolled against a trustee until he either "confesses his wrongdoing or repudiates his office," 818 F.2d 1333, that rule had never been applied to state securities cases and would not be adopted for federal ones. It then ruled that because the facts clearly established that the plaintiff could have discovered the wrongdoing had she exercised reasonable diligence, her claim was time-barred.

The defendants maintain that the same result obtains here, noting that the plaintiffs have not pleaded affirmative acts of concealment by Litwin and have not pleaded that they acted with due diligence to discover the fraud. But there is a fatal flaw in this argument. *Norris* says that the due diligence inquiry is an objective one, so it matters not whether the plaintiff actually used due diligence so long as she could not have discovered the fraud if she had. 818 F.2d 1334. Although the complaint here does not establish the plaintiffs' due diligence, it does allege that the plaintiffs did not discover the fraud until September 1986, and that because of the scheme to cover it up could not have discovered it sooner. Thus, the allegations here suffice to plead equitable tolling under federal law, and the § 10(b) claim cannot be dismissed on statute of limitations grounds.

The defendants, however, have another weapon. They argue that *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 495–97 (7th Cir.1986), establishes that an attorney may not be held liable for aiding and abetting a § 10(b) violation where his alleged wrongdoing involves only a failure to disclose. That description of *Barker* is true to a point, but ignores the reasoning of the opinion and its application to the facts alleged here.

*Barker* did not alter the rule that any person, including an attorney, who participates in a securities fraud with the requisite scienter may be held liable under § 10(b). Instead, the Court held that mere silence on the part of an attorney was not enough to get to the jury on the state of mind element because attorneys have a duty not to disclose their client's wrongdoing. *Id.* at 496–97. To allow a jury to presume an intent to defraud on the basis of silence, the Court reasoned, would be to ignore the special role of an attorney in his client's affairs.

To show the limited scope of its holding, the *Barker* Court specifically noted two factors making an inference of fraudulent intent improper there: the attorney had not benefited from the fraud, and the attorney had no duty to disclose. Without these, it just was not possible to infer fraudulent intent from the failure to disclose.

This case, by contrast, has both. The plaintiffs have alleged that Litwin was a direct and intentional participant in the conspiracy who, it may be inferred, benefited as a shareholder and officer of ERI, the general partner in the fraudulent venture. The plaintiffs have also alleged that Litwin purported to serve as their attorney, and therefore had a duty to disclose the wrongdoing to them. These two factors take this case outside of the limited holding in *Barker* and permit the plaintiffs to proceed with their § 10(b) claims.

### b. Count II

Count II alleges a RICO violation—actually, three of them. This court ruled in *Pucci I* that the count fails to state a claim because the plaintiffs have not alleged a pattern of racketeering activity. Since the plaintiffs have neither amended this count nor sought reconsideration of the dismissal, Count II will be dismissed again.

## CONCLUSION

The plaintiffs' motion to reconsider is granted and this court's ruling of December 7, 1988 vacated. The defendants' motion to dismiss is granted in part and denied in part. Specifically, Counts II, V, VII, VIII, XI and XII are dismissed.