### Wayne CARLSON, et al., Plaintiffs–Appellants,

v.

### BEAR, STEARNS & COMPANY INCORPORATED, a foreign corporation, Defendant–Appellee.

### No. 89–1936.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1990.

Decided July 5, 1990.

William N. Twohey, George Mueller, Hoffman, Mueller, Creedon & Twohey, Ottawa, Ill., for plaintiff-appellant.

James E. Beckley, Christopher J. Barber, Marsha A. Tolchin, Adler, Kaplan & Begy, Melvin L. Segal, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS and WOOD, Circuit Judges.

BAUER, Chief Judge.

This diversity action concerns the rescission of certain stock transactions pursuant to the Illinois Securities Act, ch. 121½, § 137.13. Following a bench trial, the district court entered judgment for plaintiffs, 19 individuals and one corporation, and against their broker, Patten Securities Corporation ("Patten Securities" or "Patten"), and its salesperson, Saul Ring. The court rescinded the transactions due to the defendants' failure to register as dealers and salespersons and their failure to register the securities under the Illinois Securities Act. The district court, however, refused to hold the clearing broker, Bear, Stearns & Co. ("Bear, Stearns"), jointly and severally liable for the transactions. On appeal,

plaintiffs contend, as they did before the district court, that Bear, Stearns' actions as clearing broker constituted "aid or participation" for purposes of the Illinois Securities Act and that, therefore, joint and several liability should be imposed. We disagree and affirm the district court's decision.

## I.

The plaintiffs are 19 individuals, all citizens of Illinois, and one Illinois corporation, Twait, Inc. From July 1983 to August 1984, these twenty plaintiffs purchased several thousand shares of C.I. Resources, a California real estate development company. Patten Securities, a New Jersey Corporation with its principle place of business in Florham Park, New Jersey, acted as broker for these transactions. Saul Ring, a citizen of New Jersey, was Patten Securities' salesperson dealing with the plaintiffs. Patten Securities and Ring were not registered with the Illinois Secretary of State as dealers or salespersons as required by Section 8 of the Illinois Securities Act. Ill.Rev.Stat. ch. 121½, § 137.8. Patten Securities, nevertheless, was the "market maker" for C.I. Resources, maintaining an inventory of the stock, with responsibility for conducting an orderly market. Patten Securities, through Ring, handled each of plaintiffs' orders in the stock. These C.I. Resources securities, however, were never registered with the Illinois Secretary of State as required by Section 8 of the Illinois Securities Act, Ill.Rev.Stat. ch. 121½, § 137.8.

Bear, Stearns was the clearing broker for these transactions. Following each sale, Bear, Stearns would prepare confirmations and computer records of the transaction. Each Patten customer received a letter from Bear, Stearns explaining the clearing agreement. The so-called "382 Letter," (named for its compliance with New York Stock Exchange Rule 382 allowing allocation of certain responsibilities between under-financed, local introducing brokers and well-capitalized but distant and unfamiliar clearing brokers) contained a provision stating "Bear, Stearns has at all times the right, exercisable in its own discretion, to refuse to accept orders for your account, which right it may exercise where for example, it has not received the necessary documentation for your account."

On July 22, 1986, the plaintiffs brought an action in the Circuit Court of LaSalle County, seeking rescission of their stock purchases pursuant to Section 13 of the Illinois Securities Act of 1953. Ill.Rev. Stat. ch. 121½, § 137.1, *et seq.* ("Illinois Act"). Under the Illinois Act, a purchaser of unregistered stock is entitled to the purchase price of that stock, along with reasonable attorney's fees. *See Norville v. Alton Bigtop Restaurant, Inc.,* 22 Ill. App.3d 273, 317 N.E.2d 384, 392 (1974); *Froehlich v. Matz,* 93 Ill.App.3d 398, 48 Ill.Dec. 781, 417 N.E.2d 183 (1981). The plaintiffs' complaint alleged that the defendants—the broker, salesperson, and clearing broker for the transactions—were jointly and severally liable for the purchase price of the shares for their failure to register the shares with the Illinois Secretary of State's office. The defendants subsequently removed the action to the federal district court in the Northern District of Illinois based on diversity of citizenship.

A bench trial before Judge Suzanne B. Conlon was held from December 1 through December 6, 1988. Following the conclusion of the trial, Judge Conlon issued a memorandum opinion and entered judgment against Patten and Ring in the amount of $226,660.03 and awarded plaintiffs' an additional $72,125.00 in attorneys' fees. Judge Conlon, however, held that the actions of Bear, Stearns as clearing broker did not constitute "aid or participation" for purposes of the Illinois Securities Act, and therefore Bear, Stearns could not be held jointly and severally liable for the actions of Patten and Ring. The plaintiffs now appeal this aspect of the decision.

## II.

Section 5 of the Illinois Act requires issuers, dealers, or controlling persons to register securities with the Secretary of State. Ill.Rev.Stat. ch. 121½, § 137.5. Section 8 requires all persons acting as

dealers, salespersons or investment advisers to register with the Secretary of State as well. The parties do not dispute that the C.I. Resources securities were not properly registered, nor that Patten Securities and Ring failed to register as dealer and salesperson. What the parties do dispute is Bear, Stearns' level of participation and attendant liability for these transactions.

■ The purchaser of unregistered securities is entitled to rescission as the sole civil remedy under the Illinois Act. As Section 13 of the Act provides:

> Every sale of a security made in violation of the provision of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and the issuer, controlling person, underwriter, dealer or other person by or who said sale was made, and each underwriter, dealer, or salesman who shall have participated or aided in any way in making such sale, ... shall be jointly and severally liable to such purchaser....

Ill.Rev.Stat. ch. 121½, § 137.13. Plaintiffs contend here, as they did in the district court, that Bear, Stearns' actions as the clearing agent for these stock transactions "participated or aided in any way" and therefore Bear, Stearns should be held jointly and severally liable along with Patten Securities and Ring for the violations of the Illinois Securities Act. For the following reasons, we disagree with such a broad reading of the statute.

Initially, we note that plaintiffs' statement of the issue has confused two clauses of Section 13(A) of the Illinois Securities Act. The first clause of the statute imposes joint and several liability on "the issuer, controlling person, underwriter, dealer, or other person *by or on behalf of who said sale was made.*" Beyond this, the second clause imposes this liability on "each underwriter, dealer, or salesperson *who shall have participated or aided in any way in making such sale.*" Thus, the second, broader liability extends only to three specific classes of persons: underwriters, dealers and salespersons. *See Norville v. Alton Bigtop Restaurant,* 22 Ill.App.3d 273, 317 N.E.2d 384 (1974).

Plaintiffs do not contend that Bear, Stearns acted in any of these roles as clearing agent, nor could they credibly raise such a contention. Bear, Stearns' responsibilities regarding the C.I. Resources stock transactions were, as the district court found, ministerial in nature. Bear, Stearns maintained records of the transactions, received payment for securities and delivered certificates, and printed and mailed statements and confirmations of the transactions. As the clearing agent, Bear, Stearns received a flat fee for each trade made by Patten Securities regardless of the overall volume. These duties were simple bookkeeping tasks. They were not the intimate functions performed by underwriters, dealers or salespersons.

In *Excalibur Oil, Inc. v. Sullivan,* 616 F.Supp. 458 (N.D. Ill.1985), Judge Shadur wrote that "the Illinois Act ... carefully lists and defines the specific classes of persons who may be subjected to liability. Those classes comprise persons who regularly play central and specialized roles in securities transactions and who, pursuant to Section 8, must themselves be registered with the Secretary of State." *Id.* at 466. Thus, in *Excalibur Oil,* the district court declined to impose liability on an attorney who prepared title opinions for the seller of securities in oil and gas leases.

Here, as the clearing agent in these transactions, Bear, Stearns did not play a central or specialized role. Instead, it performed a simple, albeit necessary, accounting function in order to process the orders. We will not impose the broad liability reserved under the Illinois Act for underwriters, dealers or salespersons for the performance of such limited, ministerial tasks.

Alternatively, plaintiffs appear to argue that Bear, Stearns qualifies for joint and several liability under the narrower, initial clause of the statute which covers all persons "by or on behalf of whom said sale was made." The Illinois courts have not directly addressed the question of whether the sale of stock with the assistance of a clearing agent constitutes a sale "made by or on behalf of" the clearing agent under the Illinois Act. Several federal courts, however, have discussed the question of

imposing liability on clearing agents under the federal securities laws.

In *O'Keefe v. Courtney*, 655 F.Supp. 16 (N.D.Ill.1985), the district court considered this possibility in a suit under § 20(a) of the 1934 Exchange Act, 15 U.S.C. § 78t(a). The court was asked to determine whether a clearing agent was a "controlling person" sufficient to trigger liability. Plaintiffs there contended that Mesirow, the clearing agent, had failed to use its influence to ensure that the broker notify the plaintiffs of trading in high-risk securities. This amounted to "culpable participation" by the clearing agent according to plaintiffs' complaint. As the district court noted:

> Plaintiffs miss the point—the Court has doubts whether there is anything about the relationship between an investment adviser and its independent clearing agent that would give rise to a duty of the agent to know what is and is not a high-risk investment, let alone a duty to ensure that the clients of investment advisers be made aware of such risk.

655 F.Supp. at 20 n. 3.[1] Similarly, the Southern District of New York has refused to extend liability to a clearing agent as a controlling person under § 20(a) of the '34 Act. *Baum v. Phillip, Appel & Walden, Inc.*, 648 F.Supp. 1518 (S.D.N.Y.1986). In *Baum*, plaintiffs brought suit against an introducing broker and the clearing agent, Merrill Lynch. In dismissing the claim against Merrill Lynch, the district court noted:

> The mere fact that a broker has acted as a clearing agent in circumstances where it is alleged, as here, that the registered representative of the introducing broker defrauded customers, is insufficient to impose controlling person liability on the clearing agent.

648 F.Supp. at 1533 n. 18. Thus, under federal securities law, clearing agents performing operational or ministerial duties

have not been considered controlling persons, nor subject to liability.[2]

Given this treatment of clearing agents under federal securities law, the application of the Illinois Act to such agents is straightforward. As one court has stated, "the Illinois Act is a 'far more restrictively structured statute' than the 1933 and 1934 Acts." *Gutfreund v. Christoph*, 658 F.Supp. 1378, 1397 (N.D.Ill.1987) (quoting *Excalibur Oil*, 616 F.Supp at 466.) Therefore, unlike the 1934 Exchange Act, where "controlling persons" may be read broadly to reach many parties, the Illinois Act has been applied only to persons playing "central and specialized roles." *Excalibur Oil*, 616 F.Supp. at 466. For example, in *Gutfreund*, a plaintiff sought to hold an accounting firm jointly and severally liable under the Illinois Act. The accounting firm had prepared projections used by the sellers of limited partnerships. In dismissing the claim against the accountants, the district court rejected plaintiffs' contention that the projections facilitated the sale of securities. The district court stated, "Not surprisingly, plaintiffs are unable to cite any case law in support of that very broad reading of the statute." 658 F.Supp. at 1397.

Plaintiffs before us on this appeal have similarly failed to provide any case law for their reading of the Illinois Act. They contend that the transactions could not have proceeded but for the assistance and approval of Bear, Stearns. As support for this argument, plaintiffs point to the 382 Letter sent by Bear, Stearns indicating the clearing agent's right to refuse to accept orders at its own discretion. Yet, this alone will not bootstrap a clearing agent into a controlling or facilitating party any more than the actions of an attorney or an accounting firm will make those parties

---

**1.** The court had dismissed the complaint against the broker for failure to state a claim; thus, the claim against Mesirow for secondary liability as clearing agent failed as well. Therefore, the court's discussion is merely dictum. Nevertheless, the issues considered by the court in the federal context are pertinent.

**2.** The Second Circuit has held that a brokerage house may be held liable as a controlling person under § 20(a) if it had the means to control the

principal violator's conduct. *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2nd Cir.1980). This court has held, however, that without a showing of active control of the principal violator no liability is triggered under § 20(a). *Sanders v. John Nuveen & Co.*, 524 F.2d 1064, 1072 (7th Cir.1975), *vacated on other grounds*, 425 U.S. 929, 96 S.Ct. 1659, 48 L.Ed.2d 172 (1976).

jointly and severally liable. The sale of securities, like any exchange of property in an advanced society, is usually a rather complex and convoluted transaction which requires the expertise and involvement of several parties to succeed. The Illinois Act, however, limits liability to those parties who play integral roles in these transactions. Ministerial or operational duties such as the bookkeeping functions performed by a clearing agent are not such an integral role.

■ Plaintiffs correctly point out that the Illinois Act is paternalistic in character and should be liberally construed to better protect the public. *See Martin v. Orvis Brothers & Co.*, 25 Ill.App.3d 238, 245, 323 N.E.2d 73, 80 (1974); *see also Frendreis v. Financial Concepts, Ltd.*, 106 Ill.App.3d 438, 62 Ill.Dec. 332, 435 N.E.2d 1304 (1982); *McConnell v. Surak*, 774 F.2d 746, 749 (7th Cir.1985). Yet, the Illinois Act does not create the type of overly protective parent imagined by plaintiffs. Under the Illinois Act, plaintiffs may seek rescission of their stock transactions and collect from those parties—salespersons, dealers, underwriters, etc.—who have played a central and specialized role in the transaction. They may not, however, simply seek out the deepest pocket through which the stock passed and demand repayment. Plaintiffs must demonstrate some degree of control, influence and participation on the part of a clearing agent in order to impose joint and several liability. The actions of Bear, Stearns in these transactions was not of this nature.

### III.

Bear, Stearns did not aid or participate in any way as an underwriter, dealer or salesperson, nor did it play the type of central and specialized role necessary to impose liability on any other person under Section 13 of the Illinois Act. The district court's decision not to hold Bear, Stearns jointly and severally liable is, therefore,

AFFIRMED.