RESHAL ASSOCIATES, INC., Reshal Associates Pension Plan, Reshal Associates Profit Sharing Plan, Robert Reese, David Hoialmen, and Gloria Sicilliano, Plaintiffs,

v.

LONG GROVE TRADING COMPANY, Sterling Financial Advisory Services, Inc., David B. Roberts, and Thomas A. Hopkins, Defendants.

No. 90 C 2591.

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1990.

Ronald P. Kane, Barbara L. Yong, Diane C. Fischer, Siegan, Barbakoff & Gomberg, Chicago, Ill., for plaintiffs.

Barry B. Gross, Clifford E. Yuknis, Cheryl D. Chamberlain, Shefsky & Froelich Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

## I. INTRODUCTION

Defendants in this case allegedly misrepresented the nature of various investments which they recommended and sold to plaintiffs, and plaintiffs have brought suit on a number of fraud-related theories. Pending is defendants' motion to dismiss the complaint. For the reasons stated below, defendants' motion is granted in part and denied in part.

## II. FACTS

For purposes of considering defendants' motion to dismiss, the Court accepts as true the factual allegations of the complaint. *See Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977). Plaintiffs are a pension plan, a profit sharing plan, the administrator of the plans, and individual trustees and beneficiaries of the plans. Defendant Long Grove Trading Company ("Long Grove") is in the business of selling securities and providing investment advice. Defendant Sterling Financial Advisory Services, Inc. ("Sterling") is an investment advisor affiliated with Long Grove. Defendant Thomas A. Hopkins, the President of Long Grove, sells securities and provides investment advice. Defendant David B. Roberts sells securities and provides investment advice through Long Grove and Sterling.

According to the complaint, in 1982 plaintiffs began a relationship with defendants in which defendants advised plaintiffs concerning the investments made with the funds contributed to the plans. From 1982 to 1988, plaintiffs made it clear to defendants that plaintiffs wanted the funds to be invested conservatively in investments which were readily marketable. During this same period, defendants continually represented to plaintiffs that the investments they were recommending satisfied these criteria. Notwithstanding defendants' representations, defendants advised plaintiffs to invest the funds in investments which were actually illiquid and speculative. When plaintiffs consulted with an independent investment adviser in May, 1989, they learned that defendants' representations concerning the nature of the investments had been false. As a result of defendants' misrepresentations, plaintiffs allege that they have suffered losses in excess of $130,000. The complaint lists certain communications from defendants to plaintiffs as examples of the alleged misrepresentations, and it lists a number of investments which were the subject of the alleged misrepresentations.

Plaintiffs' complaint is brought in six counts. Count I alleges that defendants' conduct violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and S.E.C. Rule 10b–5, 17 C.F.R. 240.10b–5 (collectively, "§ 10(b)"). Count II alleges common law fraud. Count III alleges that defendants breached their fiduciary duties to plaintiffs. Count IV alleges fraudulent misrepresentation in violation of the Illinois Consumer Fraud and Deceptive Practices Act, Ill.Rev.Stat. Ch. 121–½ ¶¶ 261 *et seq.* Count V alleges that defendants are liable for negligent misrepresentation. Count VI alleges that defendants violated the Illinois Securities Act, Ill.Rev.Stat. Ch. 121–½ ¶¶ 137.1 *et seq.*

**1230**

## III. PARTICULARITY OF ALLEGATIONS

### A. Rule 9(b)

█ Defendants argue that Counts I,[1] II, III,[2] IV and VI should be dismissed for failure to comply with Fed.R.Civ.P. 9(b), which requires that allegations of fraud be "stated with particularity." Rule 9(b) has generally been held to require specification of the time, place and contents of the misrepresentations, the identities of the persons who made the misrepresentations, and the manner in which the misrepresentations were communicated to the plaintiff. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990); *Coronet Insurance Co. v. Seyfarth*, 665 F.Supp. 661, 666 (N.D.Ill.1987) (Nordberg, J.); *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F.Supp. 927, 930 (N.D.Ill.1985) (Getzendanner, J.). However, Rule 9(b) must also be read in conjunction with Rule 8, which requires a plaintiff "to make known his claims simply and concisely in short, plain statements." *Tomera*, 511 F.2d at 508. *See also Coronet*, 665 F.Supp. at 666; *McKee*, 604 F.Supp. at 930; *Banowitz v. State Exchange Bank*, 600 F.Supp. 1466, 1469 (N.D. Ill.1985) (Rovner, J.). Furthermore, Rule 9(b) must not be applied blindly, but rather must be applied in view of its purposes, which are (1) to inform the defendants of the nature of the claimed wrong and enable them to formulate an effective response and defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations. *See Coronet*, 665 F.Supp. at 666; *McKee*, 604 F.Supp. at 930.

**1.** Allegations of securities fraud must comply with Rule 9(b). *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975); *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F.Supp. 927, 930 (N.D.Ill. 1985) (Getzendanner, J.).

**2.** Rule 9(b) applies to claims for breach of fiduciary duty which are based on schemes to defraud. *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir.1966).

**3.** Defendants also argue that plaintiffs have not adequately pled the time, place and contents of

█ Courts have generally rejected arguments that discovery will cure an otherwise vague complaint. *Beck v. Cantor*, 621 F.Supp. 1547, 1552 (N.D.Ill.1985) (Rovner, J.); *McKee*, 604 F.Supp. at 932. This is because a plaintiff should not need discovery in order to identify the circumstances of representations to which it was a party, and because discovery should not be a tool for determining the existence of unknown wrongs. *Beck*, 621 F.Supp. at 1552; *McKee*, 604 F.Supp. at 932. However, "[i]t is not necessary for plaintiffs to allege evidentiary details that will be used to support the claim of fraud at a later date." *Banowitz*, 600 F.Supp. at 1469. *See also Coronet*, 665 F.Supp. at 666.

█ Defendants argue that the complaint is deficient because its descriptions of the alleged misrepresentations fail to distinguish between the various defendants.[3] The principal challenged allegations are the following:

"From in or about 1982 and continuing thereafter each year, up to and including in or about February 1988, *Hopkins and/or Roberts* represented to Plaintiffs that investments they recommended for the Pension and Profit Sharing Plans met such criteria." (Complaint ¶ 10 (emphasis added).)

"[B]etween in or about November 1982 and continuing thereafter through in or about February 1988, *Defendants* advised Plaintiffs to invest the Plans' funds in illiquid and speculative investments, including, but not limited to the following...." (Complaint ¶ 11 (emphasis added).)

"In or about February 1989, *Defendants, through Roberts*, again presented Plaintiffs with reports concerning the Pension Plan and the Profit Sharing Plan." (Complaint ¶ 13 (emphasis added).)

the misrepresentations. This argument, however, is stated only in the reply brief and is not developed. The Court does not, therefore, consider it. *See Gold v. Wolpert*, 876 F.2d 1327, 1333 (7th Cir.1989) (declining to consider undeveloped arguments); *W.E. O'Neil Constr. v. National Union Fire Ins.*, 721 F.Supp. 984, 999–1000 (N.D.Ill.1989) (Rovner, J.) (court will not consider arguments raised for first time in reply brief).

*"Defendants* each year from in or about November 1982 up to and including in or about February 1988, represented that securities they recommended to be purchased by the Plans were suitable investments for both Plans...." (Complaint ¶ 19A (emphasis added).)

*"Defendants* each year from in or about November 1982 up to and including in or about February 1988, represented that securities they recommended to be purchased by the Plans were conservative investments and satisfied the liquidity objectives of Plaintiffs...." (Complaint ¶ 19B (emphasis added).)

■ Ordinarily, a plaintiff may not "lump together" multiple defendants in such a way that the defendants cannot discern from the complaint which defendant made each representation. *Sears,* 912 F.2d at 893; *McKee,* 604 F.Supp. at 931. "Where there are allegations of a fraudulent scheme with multiple defendants ... the complaint must inform each defendant of the specific fraudulent acts which constitute the basis of the action against the particular defendant." *Coronet,* 665 F.Supp. at 666. The strictness with which this rule is applied, however, varies according to the nature of the allegations; plaintiffs are required to distinguish among defendants to the extent that they may reasonably be expected to be able to do so. As stated in *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1279 (N.D.Ill. 1976) (Decker, J.):

It is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him, but he can at least identify the particular defendants who allegedly dealt with him, and he can describe the circumstances under which particular defendants dealt directly with him.

*See also McKee,* 604 F.Supp. at 932. Furthermore, "[e]ven where the role of each defendant is a matter particularly within the knowledge of the defendants, plaintiffs must make allegations with a statement of facts upon which the belief is founded." *Coronet,* 665 F.Supp. at 666. However, where the facts necessary for more specific pleading are not immediately accessible to the plaintiffs, further detail is not required.

*See Coronet,* 665 F.Supp. at 666 ("There may be specific matters as to which it is appropriate to refer to some defendants collectively"); *Banowitz,* 600 F.Supp. at 1469 ("In a securities fraud case, plaintiffs are not required '... to set forth facts which, because no discovery has yet occurred, are in the exclusive possession of defendants.'"), quoting *Merrit v. Libby, McNeill & Libby,* 510 F.Supp. 366, 373 (S.D.N.Y.1981). In making this determination, courts should keep in mind Rule 9(b)'s purpose of allowing the defendants an opportunity to make an effective response:

The conduct of [corporate insiders] need not be specified and the fraudulent acts complained of need not be attributed to certain persons if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations.

*Banowitz,* 600 F.Supp. at 1469.

■ In this case, plaintiffs have failed to distinguish among defendants with respect to allegations of misrepresentations which were communicated to plaintiffs. Because plaintiffs were the recipients of these allegations, they should be able to identify which defendants made the various representations. This is not a case, however, where plaintiffs' failure to be more specific implicates Rule 9(b)'s purposes to any substantial extent. Plaintiffs have provided several concrete examples of alleged misrepresentations, contained in documents attached to the complaint, and one reason for the lack of further specificity may be a desire to avoid overwhelming the complaint with impenetrable and complex details that could be more easily shared during discovery. Although plaintiffs refer to an ongoing pattern of misrepresentations over the course of several years, the number of defendants involved is very limited. Plaintiffs' allegations are not inconsistent or confusing. *Cf. Coronet,* 665 F.Supp. at 666 (allegations were inconsistent). They do not leave the reader without any basis for inferring that particular defendants were involved in the alleged wrongs. *Cf. McKee,* 604 F.Supp. at 931 ("the pleading fails to identify any activities by Pope and Lindgren that lead to the inference of their

participation in fraudulent activity"). They are specific enough that the Court has no concern that the complaint is a pretext to force a quick settlement or to allow discovery which may uncover unknown wrongs. *Cf. McKee,* 604 F.Supp. at 932. The allegations of fraud are not cryptic or conclusory. *Cf. Flynn v. Merrick,* 881 F.2d 446, 449 (7th Cir.1989) ("[t]he cryptic statements found in the complaint do not establish fraud to the degree of particularity required"); *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 818 (7th Cir.1987) (allegation which did not identify a single statement or specify why such a statement was fraudulent was not sufficiently particular). The scheme is sufficiently circumscribed that defendants should be able to respond effectively. *Cf. Banowitz,* 600 F.Supp. at 1469 ("Defendants have been given notice of the alleged fraud sufficient to allow adequate responsive pleading"). Thus unlike the usual case in which Rule 9(b) warrants dismissal of a complaint, plaintiffs' allegations do not raise substantial concerns that the allegation of fraud is frivolous or that defendants cannot adequately respond. Under these circumstances, dismissal of the complaint—rather than a less drastic measure such as ordering a more definite statement—is not in the financial interests of the parties, nor would it further judicial efficiency. Accordingly, defendants' motion to dismiss for lack of particularity is denied, but it shall be treated as seeking in the alternative a more definite statement, and that alternative request is granted.

## B. Secondary Liability

■ Plaintiffs allege that defendants are jointly and severally liable pursuant to four distinct theories: that they directly or indirectly control persons who are primarily liable; that they aided and abetted one another; that they conspired with each other; and that Long Grove and Sterling are liable for the actions of Hopkins and Roberts on the basis of respondeat superior. (Complaint ¶¶ 22–24.)[4] Because the issues in this case are similar with respect to each of the four theories, the Court shall briefly review the legal requirements of each theory before considering the sufficiency of plaintiffs' allegations.

Various competing tests exist for determining control person liability pursuant to § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a).[5] In *Schlifke v. Seafirst Corp.,* 866 F.2d 935 (7th Cir.1989), the court stated:

> Several circuits have adopted the two-prong test introduced in *Metge v. Baehler,* 762 F.2d 621 (8th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986), requiring the plaintiff to establish "that the defendant lender actually participated in (i.e., exercised control over) the operations of the [borrowing entity] in general.... [and] that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated." Other courts have applied a more rigorous test requiring "culpable participation" in the alleged illegal activity. We need not decide whether to adopt this more rigorous formulation....

866 F.2d at 949. For reasons that will be made clear below, this Court similarly need not choose among these tests at this point. To allege control person liability, a plaintiff must allege at least the potential for control over the specific acts constituting a primary violation; a vague allegation of general control is insufficient. *See Schlifke,* 866 F.2d at 949–50; *Craig v. First American Capital Resources, Inc.,*

4. These allegations are contained in Count I but are incorporated in the other counts by reference. However, the allegations with respect to the first three theories specifically refer to the § 10(b) claim of Count I. Indeed, the first theory—control person liability—derives directly from the federal securities laws.

5. This statute provides in part:

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

740 F.Supp. 530, 537 (N.D.Ill.1990) (Bua, J.).

■ To state a claim for aider and abettor liability for a violation of § 10(b), a plaintiff must allege, at a minimum, that "(1) someone committed a primary violation, (2) positive law obliges the abettor to disclose the truth, and (3) the abettor fail[ed] to do this, with the same degree of scienter necessary for the primary violation." *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990).[6] Conclusory allegations do not suffice to state a claim for aiding and abetting. *See Bianco v. Texas Instruments, Inc.*, 627 F.Supp. 154, 162–63 (N.D.Ill.1985) (Grady, J.).

■ To state a claim for liability under a conspiracy theory, a plaintiff must allege an agreement that each defendant agreed to the operation of the conspiracy. Conclusory allegations do not suffice to state a claim for conspiracy. *See First Interstate Bank of Nevada v. Chapman & Cutler*, 837 F.2d 775, 780 (7th Cir.1988). Finally, with respect to respondeat superior, a plaintiff must allege that the employee had actual or apparent authority to engage in the wrongful acts. *See Harrison v. Dean Witter Reynolds, Inc.*, 715 F.Supp. 1425, 1429 (N.D.Ill.1989) (Duff, J.).

■ Defendants contend that plaintiffs have not adequately pled facts supporting any of these bases for secondary liability. Defendants essentially argue that plaintiff has not identified the relationships and roles of the various defendants. Plaintiffs do allege that Sterling is affiliated with Long Grove, that Hopkins is President of Long Grove, and that Hopkins and Sterling acted through Long Grove and Sterling. Some specific allegations concerning initial investment advice are directed toward Hopkins in particular, and some allegations concerning reports provided to plaintiffs are directed toward Roberts. Most of the allegations, however, refer to "defendants" or to "Hopkins and/or Roberts." The allegations of secondary liability are conclusory but are intended to be supported by the factual allegations in the body of the complaint.

The Court has some concerns as to plaintiffs' failure to detail the exact relationships between the defendants and to parcel out the blame among them. There is a difference, however, between this case and the majority of the cases requiring particularized allegations supporting secondary liability. In this case, the secondary liability allegations are not directed toward third parties, such as banks or accountants; rather, they are alternative theories directed toward individuals or entities who are also alleged to be primarily liable. To require particularized allegations may well require plaintiffs to allege an unnecessarily complicated arrangement along the following lines: "Defendant Hopkins is primarily liable for the reasons stated in the body of this complaint. However, in the event that the Court finds that Hopkins is not primarily liable, plaintiffs alternatively allege that Long Grove, Sterling, and/or Roberts is primarily liable, and that Hopkins is secondarily liable." The complaint would then set forth the elements of each type of secondary liability as to Hopkins. Next, plaintiffs would perform the same routine with respect to each of the other three defendants.

The Court can see little benefit to dismissing the complaint and requiring plaintiffs to perform this exercise, where the basic theory of the complaint is clear and its factual allegations, accepted as true, do not raise doubts as to the existence of a cause of action or the participation of each defendant. Furthermore, while not determinative, the fact that plaintiffs are unlikely to be able to distinguish completely between the defendants until they have engaged in discovery weighs against dismissal of the complaint. The Court views the complaint as having some minor problems with respect to failure to adequately distinguish the relation between, and the conduct of, the various defendants, but those concerns are not so substantial as to warrant dismissal of the complaint. Accordingly,

---

6. Additional requirements may also exist. *DiLeo*, 901 F.2d at 628.

as with the Rule 9(b) issue, the Court will deny defendants' motion to dismiss the complaint based on failure to plead secondary liability, but the Court will treat defendants' motion as in the alternative requesting a more definite statement, and that motion will be granted. Plaintiffs are instructed to identify, to the extent they are able consistent with the progress of discovery and the requirements of Rule 11, to specify which defendants allegedly performed which misrepresentations and to specify any defendants who are alleged to be liable only secondarily.

## IV. CAUSATION

Defendants next argue that plaintiffs have failed to allege "loss causation." Although defendants develop this argument only with respect to Count I, they assert that the other counts fail for the same reason. Defendants' argument is premised on *Bastian v. Petren Resources Corp.*, 892 F.2d 680 (7th Cir.1990), *cert. denied,* —— U.S. ——, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990), in which the court affirmed the dismissal of a § 10(b) case for failure to allege loss causation.

In *Bastian*, the plaintiffs had allegedly relied on misrepresentations concerning the defendants' competence and integrity in deciding to invest $600,000 in oil and gas limited partnerships which the defendants promoted. The plaintiffs further alleged that in the absence of the misrepresentations they would not have invested in the partnerships, which eventually became worthless. The court found that the plaintiffs had not alleged that but for the harm they complained of, they would not have been injured. 892 F.2d at 685. The court noted that the complaint left open the possibility that the losses were caused by a general change in market conditions and that if the defendants had not made the misrepresentations the plaintiffs would have invested in equally unsuccessful partnerships promoted by persons of competence and integrity. *Id.* at 684–85.

The court in *Bastian* also provided a hypothetical example of an instance which would satisfy the loss causation requirement:

> Suppose a broker gives false assurances to his customer that an investment is risk-free. In fact it is risky, the risk materializes, the investment is lost. Here there can be no presumption that but for the misrepresentation the customer would have made an equally risky investment. On the contrary, the fact that the broker assured the customer that the investment was free of risk suggests that the customer was looking for a safe investment.

*Id.* at 685–86.

■■■ The instant case comes squarely within the hypothetical described by the court in *Bastian*. Plaintiffs allege that they desired "conservative" and "liquid" investments. (Complaint ¶ 10.) They allege that defendants represented that the investments they recommended met those criteria. (Complaint ¶ 10.) They allege that defendants in fact invested plaintiffs' funds in "speculative" and "illiquid" investments. (Complaint ¶ 11.) They further allege that defendants provided reports which misrepresented the yields and the liquidity of investments which had been made. (Complaint ¶¶ 12–13.) Finally, they specifically allege that they suffered losses "as a direct result of Defendants' fraudulent misrepresentations." (Complaint ¶ 15.) The clear inference is that had it not been for defendants' misrepresentations concerning the investments' liquidity and yield, plaintiffs would have invested in investments which were more valuable because they were more liquid and had better yields. Similarly, if it had not been for defendants' misrepresentations concerning the conservative nature of the investments, plaintiffs would have invested in less risky investments. If plaintiffs had invested in more liquid, less speculative and higher yield investments, it is fair to infer that their losses would not have occurred. Accordingly, the Court rejects defendants' argument that plaintiffs have failed to allege loss causation.

With respect only to Count I, defendants further argue that plaintiffs have failed to

state a claim because "defendants' alleged failure to perform prospectively in a manner consistent with the plaintiffs' supposed investment desires does not constitute fraud." Defendants argue that this case is not about fraud, but is solely about plaintiffs' dissatisfaction with the performance of their investments. *See DiLeo*, 901 F.2d at 627 ("Securities laws do not guarantee sound business practices and do not protect investors against reverses.").

In light of plaintiffs' clear allegations that defendants made misrepresentations, it is difficult to understand defendants' attempt to rewrite the complaint so that it does not concern fraud in the first place. At best, defendants' argument is simply a repetition of the loss causation argument. As described above, the Court finds that plaintiffs have adequately alleged loss causation.

## V. SCIENTER

Defendants argue that Count I also fails because plaintiffs have not adequately alleged scienter. Although the complaint alleges that defendants acted "knowingly or with reckless disregard" (Complaint ¶ 18) and that their misrepresentations "were intentionally or recklessly made" (Complaint ¶ 19), defendants contend that these allegations are too conclusory to satisfy the scienter pleading requirements.

██ Scienter is a necessary allegation of a § 10(b) claim. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The scienter requirement may be satisfied by an allegation of reckless conduct. *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1040 (7th Cir.) *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977). Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition· of mind of a person may be averred generally." *See DiLeo*, 901 F.2d at 627. However, the complaint must include some factual basis for such an allegation of scienter. *See WAIT Radio v. Price Waterhouse*, 691 F.Supp. 102, 106 (N.D.Ill.1988) (Grant, J.) ("When fraudulent intent is not evident from the circumstances, a strong inference of the required

scienter can be established by allegations of facts showing a motive for committing fraud and a clear opportunity to do so.").

██ Defendants argue that the circumstances supporting the allegation of scienter must be pled with specificity; the Court cannot agree. Defendants rely on the following excerpt from *DiLeo:* "Although states of mind may be pleaded generally, the 'circumstances' must be pleaded in detail." 901 F.2d at 627. Defendants read this excerpt to mean "the circumstances supporting the state of mind allegation must be pleaded in detail." This is a fundamental distortion of *DiLeo* which can be achieved only by ignoring the context of the excerpt and the language of Rule 9(b). Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

*DiLeo*, explaining Rule 9(b), states:

> Fed.R.Civ.P. 9(b) requires the plaintiff to state "with particularity" any "circumstances constituting fraud". Although states of mind may be pleaded generally, the "circumstances" must be pleaded in detail.

901 F.2d at 627. Clearly, the *DiLeo* court meant that the "circumstances constituting fraud" must be pled in detail, not that the circumstances constituting the state of mind must be pled in detail. Defendants, by quoting *DiLeo* out of context, have attempted to turn the language into the opposite of its intended meaning.

██ The existence of intent may be more questionable, and allegations of intent may thus be scrutinized more carefully, where the defendant is charged with contributing to a fraud that was primarily committed by a third party. *See, e.g., WAIT Radio*, 691 F.Supp. at 106. In this instance, however, where the defendants themselves are alleged to have made false representations directly to plaintiffs, and where a motive for doing so is apparent from the face of the complaint, there is a

sufficient factual basis in the complaint for a general allegation of scienter. Accordingly, the Court rejects defendants' argument that plaintiffs' allegation of scienter is inadequate.

## VI. ILLINOIS SECURITIES LAW

■ Count VI claims that defendants have violated § 12 of the Illinois Securities Act, Ill.Rev.Stat. ch. 121½ ¶ 137.12. That statute permits the injured purchaser to recover "the full amount paid ... less any income or other amounts received by such purchaser on such securities." Ill.Rev. Stat. ch. 121½ ¶ 137.13. The only remedy available for a violation of § 12 is rescission; courts have refused to imply a damages remedy. *See Renovitch v. Stewardship Concepts, Inc.*, 654 F.Supp. 353, 359 (N.D.Ill.1987) (Leighton, J.).

■ In order to recover pursuant to § 12, the purchaser must give notice of an election of rescission within six months after the purchaser gains knowledge that the securities sales are voidable. Ill.Rev.Stat. ch. 121½ ¶ 137.13. Where a plaintiff does not allege that he made such an election, a claim for relief pursuant to § 12 cannot stand. *See Renovitch*, 654 F.Supp. at 359.

The complaint alleges that plaintiffs gave notice of their election within one year of their discovery that the investments were voidable. (Complaint ¶ 16.) Defendants argue that plaintiffs have failed to plead compliance with the six-month notice requirement. Plaintiffs respond that just as equitable principles have been applied with respect to statute of limitations issues arising under the Illinois Securities Act, the Court should apply equitable principles to construe the Act's notice provisions. Plaintiffs rely on cases which held that the old three-year statute of limitations in the Illinois Securities Act, Ill.Rev.Stat. ch. 121½ ¶ 137.13(D),[7] could be tolled where the fraud went undiscovered because the plaintiff remained unaware of the fraud despite the absence of any fault or lack of diligence on plaintiff's part, *see*

*Teamsters Local 282 Pension Trust v. Angelos*, 815 F.2d 452, 456 (7th Cir.1987), or where the fraud went undiscovered because the defendant took affirmative steps to conceal the fraud, *see Teamsters*, 815 F.2d at 456 n. 4; *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir.1975). *See also Pucci v. Santi*, 711 F.Supp. 916, 922–23 (N.D.Ill. 1989) (Duff, J.).

■ Plaintiffs cite no authority for their argument that similar principles should apply to toll the six-month notice requirement, nor do they provide any logical basis for this argument. The notice requirement already incorporates the above principles by providing that notice must be given within six months *after knowledge of the voidability of the sales.* It is true that, in cases not cited by plaintiffs, Illinois courts have been lenient in their interpretation of what constitutes knowledge of voidability. They have held that the time for notice begins to run not from the time of knowledge of the underlying facts, but rather from the time of knowledge that those facts give rise to a right of rescission. *See, e.g., Buehl v. Dayson*, 127 Ill.App.3d 958, 965, 469 N.E.2d 403, 408, 82 Ill.Dec. 869, 874 (5th Dist.1984); *Frendreis v. Financial Concepts, Ltd.*, 106 Ill.App.3d 438, 441, 435 N.E.2d 1304, 1305–06, 62 Ill. Dec. 332, 333–34 (1st Dist.1982). *See also Gutfreund v. Christoph*, 658 F.Supp. 1378, 1396 (N.D.Ill.1987) (Shadur, J.). This principle, however, does not assist plaintiffs in this case, for they allege only that they were not aware of the misrepresentations "until sometime after May 1989." (Complaint ¶ 14.) Because this was more than six months before they gave notice of an intent to rescind, they did not comply with § 13, and Count VI must be dismissed.

## VII. CONSUMER FRAUD

■ In Count IV, plaintiffs allege that defendants are liable for violating the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½ ¶¶ 261 *et seq.* Defendants argue that this

---

7. This statute was amended effective January 1, 1986, to include a five-year statute of repose.

*See infra* at 1238.

count should be dismissed for failure to allege a public injury or general effect on consumers. This Court—in a case which, inexplicably, neither party has cited—has already determined that such an allegation is unnecessary where the plaintiff was itself the consumer affected by the challenged action. *W.E. O'Neil Construction Co. v. National Union Fire Insurance Co.*, 721 F.Supp. 984, 1001 (N.D.Ill.1989) (Rovner, J.) (noting split in authorities). The Court has been given no reason to alter this view—indeed, the Court's holding finds implicit support in the Illinois legislature's subsequent amendment of the Act to provide that "[p]roof of a public injury, a pattern, or an effect on consumers generally shall not be required." Ill.Rev.Stat. ch. 121½ ¶ 270a(a) (effective Jan. 1, 1990). Accordingly, the Court denies defendants' motion to dismiss Count IV for failure to allege public injury.

## VIII. STATUTES OF LIMITATIONS

### A. Counts II, III, IV and V

Defendants argue that Counts II, III, IV and V are barred by the five-year statute of limitations of Ill.Rev.Stat. ch. 110 ¶ 13–205 to the extent that the counts are based on sales which occurred more than five years prior to the filing of the complaint. Plaintiffs do not dispute the applicability of ¶ 13–205, but they assert that they have adequately pled an entitlement to equitable tolling of the limitations period.

■ In Illinois, a plaintiff is entitled to tolling of a limitations period if she shows both that the defendant fraudulently concealed the existence of the cause of action and that the plaintiff could not have discovered the cause of action through the exercise of due diligence. *See Tate v. Beverly Chrysler Plymouth*, 182 Ill.App.3d 830,

837, 538 N.E.2d 663, 667, 131 Ill.Dec. 288, 292 (1st Dist.1989); *Leffler v. Engler, Zoghlin & Mann, Ltd.*, 157 Ill.App.3d 718, 721–23, 510 N.E.2d 1018, 1020, 109 Ill.Dec. 950, 952 (1st Dist.1987).[8] In order to show fraudulent concealment, a plaintiff must show more than mere silence on the part of the defendant; she must show affirmative acts or representations which are calculated to prevent discovery. *Tate*, 182 Ill. App.3d at 837, 538 N.E.2d at 667, 131 Ill. Dec. at 292; *Zagar v. Health & Hospitals Governing Comm'n*, 83 Ill.App.3d 894, 898, 404 N.E.2d 496, 500, 39 Ill.Dec. 112, 116 (1st Dist.1980).

■ In this case, plaintiffs allege a series of misrepresentations which continued until February of 1989 and which prevented plaintiffs from discovering the fraud until May of 1989, one year prior to the filing of the lawsuit. Plaintiffs further allege that even with the exercise of reasonable care, they could not have learned of the misrepresentations until May of 1989. This is not a case in which defendants are accused merely of remaining silent in light of a past fraud or in which the circumstances apparent in the complaint indicate that the fraud should have been discovered in the exercise of due diligence. Furthermore, at this preliminary stage courts require little beyond general allegations to satisfy the tolling requirements. *See, e.g., Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975); *Frank E. Basil, Inc. v. Leidesdorf*, 713 F.Supp. 1194, 1201 (N.D.Ill. 1989) (Duff, J.). The Court finds that plaintiffs' allegations in this case establish a basis for tolling of the limitations period.

### B. Count I

#### 1. Applicability of New Statute of Limitations

With respect to the § 10(b) count, defendants also argue that some of the securi-

---

**8.** Illinois courts have also held that even where a plaintiff establishes the requirements for tolling, the plaintiff must file suit within a reasonable period of time after discovery of the existence of the cause of action and may not always wait for a period of time equal to the limitations period. *See Tate*, 182 Ill.App.3d at 838, 538 N.E.2d at 667, 131 Ill.Dec. at 292; *Leffler*, 157 Ill.App.3d at 722, 510 N.E.2d at 1020, 109 Ill. Dec. at 952. *But cf. Kinsey v. Scott*, 124 Ill.

App.3d 329, 339, 463 N.E.2d 1359, 1366–67, 79 Ill.Dec. 584, 591–92 (2d Dist.1984) ("The effect of the discovery rule is to postpone the starting of the period of limitations until the injured party knows or should have known of his injury."). Defendants have not argued that if plaintiffs have alleged a basis for tolling, portions of their claims are nonetheless barred, and the Court thus does not reach that issue.

ties sales described in the complaint are barred by the statute of limitations. Section 10(b) does not contain an express limitations period because it does not include an express private cause of action. The private cause of action for violations of § 10(b) has been implied by federal courts, which have accordingly found it necessary to imply a statute of limitations as well. Until recently, they did so by applying the statute of limitations for the most similar state cause of action. *See Davenport v. A.C. Davenport & Son Co.*, 903 F.2d 1139, 1140 (7th Cir.1990). In Illinois, this was the "blue sky" law, the statute of limitations of which provided, until recently, that "[n]o action shall be brought for relief under this Section ... after three years from the date of sale." Ill.Rev.Stat. ch. 121½ ¶ 137.13(D). *See Davenport*, 903 F.2d at 1140; *Teamsters Local 282 Pension Trust Fund v. Angelos*, 815 F.2d 452, 455 (7th Cir.1987). That statute was amended effective January 1, 1986, to add explicit provisions allowing tolling but also adding a five-year statute of repose.[9]

The Supreme Court cast some doubt on the adoption of state limitations periods in § 10(b) cases when it borrowed federal rather than state limitations periods to govern implied causes of action in the cases of *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (borrowing statute of limitations for unfair labor practice charges for use in actions by employees alleging breach of collective bargaining agreement or breach of duty of fair representation), and *Agency Holding Corp. v. Malley–Duff Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (borrowing antitrust statute of limi-

tations for use in RICO actions). In light of those opinions, the Third Circuit in 1988 overruled its prior decisions holding that the statute of limitations for § 10(b) actions should be borrowed from the most similar state statute, and concluded that a uniform limitations period should be implied based on the most similar federal express cause of action. *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). It determined that the appropriate source for a limitations period was the other provisions of the Securities Exchange Act of 1934, most of which provided a one-year statute of limitations and a three-year statute of repose. *See* 15 U.S.C. §§ 77m, 78i(e), 78r(c), 78cc(b). Accordingly, the court held that the statute of limitations for § 10(b) actions would be one year, which could be tolled to allow a period of up to three years. 843 F.2d at 1545–51.

In July of 1990, the Seventh Circuit joined the Third Circuit, finding that the Supreme Court's opinions necessitated a departure from the Seventh Circuit's previous cases holding that state statutes of limitations supplied the appropriate limitations period for § 10(b) actions. *See Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990). The court derived a statute of limitations period for § 10(b) actions from § 13 of the Securities Act of 1933, as amended by the Securities Exchange Act of 1934, 15 U.S.C. § 77m, which provides a one-year statute of limitations and a three-year statute of repose. 908 F.2d at 1392.[10]

In reaching the decision to look to federal rather than state law to supply a limita-

---

9. As amended, the statute reads:

No action shall be brought for relief under this Section ... after three years from the date of sale, provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation ... which is the basis for the action, the three-year period provided herein shall begin to run upon the earlier of (1) the date upon which the party bringing such action has actual knowledge of the alleged violation of this Act, or (2) the date upon which the party bringing such action has notice of facts which in the exercise

of reasonable diligence would lead to actual knowledge of the alleged violation of this Act; but in no event shall the period of limitation so extended be more than two years beyond the expiration of the three-year period otherwise applicable.

Ill.Rev.Stat. ch. 121½ ¶ 137.13(D).

10. The Second Circuit followed suit on November 8, 1990, holding in *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990), that the proper statute of limitations for § 10(b) actions is one year, with a three-year period of repose, as provided in 15 U.S.C. §§ 78i(e), 78r(c).

tions period, the Court in *Short* noted several factors which differentiate § 10(b) actions from other areas in which courts have traditionally borrowed limitations periods from state law. First, because Congress did not create an express cause of action, it could not have anticipated that courts would need to imply a statute of limitations and thus that they would turn to state law. 908 F.2d at 1387. Second, Congress had not been silent with respect to limitations periods governing other causes of action under the securities laws, so there could be no presumption that Congress intended courts to look to state law. *Id.* at 1387–88. Third, looking to state law invariably gave rise to conflict-of-law problems which were inconsistent with Congress' desire for a national framework to govern multi-state securities transactions. *Id.* at 1388. In the context of § 10(b), the court found it appropriate to look to federal law because it provided a closer analogy than did state statutes, because of the federal policies at stake, and because of the difficulties inherent in choosing an appropriate state statute. *Id.*

The *Short* court left open the question of whether the new limitations rule should be applied retroactively. *Id.* at 1389–90.[11] That issue is posed by this case. In general, cases are decided in accordance with the law as it exists at the time of the decision. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Whether an exception to this rule is appropriate in a particular instance depends on three factors:

(1) the decision at issue overrules clear precedent on which litigants may have relied or addresses an issue of first im-

pression which was not foreshadowed; (2) retroactive application of the decision would retard the operation of a federal statute; and (3) retroactive application would result in substantial inequity. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296 (1971).

*Smith v. Firestone Tire and Rubber Co.,* 875 F.2d 1325, 1326 (7th Cir.1989).

The first factor is satisfied where "the decision to be applied nonretroactively ... establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355, 30 L.Ed.2d 296. Where the decision in question comes from a federal court of appeals, application of this factor focuses on the precedent within that circuit rather than on the nation as a whole. *Anton v. Lehpamer,* 787 F.2d 1141, 1143 (7th Cir. 1986).

Here, there was clearly established precedent in the Seventh Circuit that the source of the statute of limitations for § 10(b) cases brought in federal courts in Illinois was the Illinois blue sky law. *See, e.g., Davenport,* 903 F.2d at 1140; *Norris v. Wirtz,* 818 F.2d 1329, 1331 (7th Cir.1987); *Teamsters,* 815 F.2d at 455; *Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000, 1004 (7th Cir.1984); *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123, 125–27 (7th Cir.1972). As the court stated in *Short,* "[f]or many years we have applied to cases under Rule 10b–5 statutes of limi-

---

**11.** *See also Radiology Center v. Stifel, Nicolaus & Co.,* 919 F.2d 1216 (7th Cir.1990) (not reaching issue); *Robin v. Arthur Young & Co.,* 915 F.2d 1120, 1123 (7th Cir.1990); *Astor Chauffered Limousine Co. v. Runnfeldt Investment Co.,* 910 F.2d 1540, 1544 (7th Cir.1990) (same).

In this respect as well, the Seventh Circuit followed the lead of the Third Circuit in *Data Access,* 843 F.2d at 1550–51. The retroactivity issue has itself spawned a cottage industry of litigation, particularly in the Third Circuit itself. *See, e.g., Gruber v. Price Waterhouse,* 911 F.2d 960 (3d Cir.1990) (not retroactively applied); *McCarter v. Mitcham,* 883 F.2d 196 (3d Cir.1989)

(retroactively applied); *Gatto v. Meridian Medical Associates, Inc.,* 882 F.2d 840 (3d Cir.1989) (retroactively applied), *cert. denied,* —— U.S. ——, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990); *Hill v. Equitable Trust Co.,* 851 F.2d 691, 697 (3d Cir.1988) (retroactively applied), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989); *Panna v. Firstrust Savings Bank,* 749 F.Supp. 1372 (D.N.J.1990) (retroactively applied); *Capital Care Corp. v. Lifetime Corp.,* No. 88–2682, 1990 WL 158604 (E.D.Pa. Oct. 16, 1990) (retroactively applied); *In re National Smelting of New Jersey,* 722 F.Supp. 152, 160 (D.N.J.1989) (not retroactively applied).

tations borrowed from state blue sky statutes." 908 F.2d at 1387.

Defendants might argue that the decision in *Short* had been foreshadowed by the Supreme Court's opinions in *DelCostello* and *Agency Holding* and by language in Seventh Circuit opinions prior to *Short* indicating the attractiveness of adopting a uniform federal statute of limitations for § 10(b) actions. *See Norris*, 818 F.2d at 1332–33; *Teamsters*, 815 F.2d at 455. However, those opinions expressly declined to change the law in this area and reaffirmed the applicability of the Illinois provision. Even after *Data Access*, the Seventh Circuit did not immediately adopt a uniform federal approach. *See Davenport*, 903 F.2d at 1141. In light of the Seventh Circuit's consistent use of the Illinois statute until the *Short* decision, any foreshadowing of *Short* is too weak to allow this Court to find that *Short* did not overrule clear past precedent. Accordingly, the first factor for non-retroactive application is satisfied. *See also Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325 (7th Cir.1989) (rule announced in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), effectively shortening statute of limitations for Illinois plaintiffs bringing § 1981 actions, would not be applied retroactively); *Anton*, 787 F.2d 1141 (rule announced in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), effectively shortening statute of limitations for Illinois plaintiffs bringing § 1983 actions, would not be applied retroactively).[12]

The second factor requires the Court to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Chevron*, 404 U.S. at 106–07, 92 S.Ct. at 355. Application of this factor in the context of stat-

utes of limitations generally focuses on two interests: the remedial interest served by the cause of action, and the interest of uniformity and certainty. *See, e.g., McCarter v. Mitcham*, 883 F.2d 196, 203–04 (3d Cir.1989); *Smith*, 875 F.2d at 1327; *Anton*, 787 F.2d at 1144–45; *Landahl v. PPG Industries, Inc.*, 746 F.2d 1312, 1315 (7th Cir.1984). Where a judicial decision shortens the statute of limitations, retroactive application tends to further the second interest but hinder the first interest. It has also been noted that placement of undue emphasis on the uniformity interest would "swallow[ ] the rule," because new statutes of limitations would always be applied retroactively. *McCarter*, 883 F.2d at 204. In *Smith*, the court stated:

> Fully retroactive application of *Goodman* would clearly interfere with the rights of federal litigants who were injured prior to *Goodman* by shortening the limitations period from five to two years. Further, the interests of uniformity and certainty will be only minimally affected by prospective application of *Goodman* since only those actions which accrued prior to *Goodman* would be subject to a different limitations period.

875 F.2d at 1327. For the same reasons, the Court finds that the second factor supports non-retroactivity in this case.

Third, the Court must examine any inequity imposed by retroactive application. *Chevron*, 404 U.S. at 107, 92 S.Ct. at 355. This factor often incorporates an analysis of whether plaintiffs justifiably relied on the previous law to their detriment. *See, e.g., Smith*, 875 F.2d at 1327–28; *Anton*, 787 F.2d at 1145. Where a plaintiff filed a lawsuit immediately upon learning of the violation, courts have found that there was no reliance on the earlier law, and retroactive application of the new law was therefore appropriate. *E.g., Short*, 908 F.2d at 1390; *Flaherty v. Greenblatt*, No. 88 C 9755, 1990 WL 172698 (N.D.Ill. Oct. 31, 1990) (Marovich, J.) (applying *Short* retro-

---

**12.** In the majority of cases considering retroactive application of *Data Access*, the Third Circuit has found that *Data Access* did not depart from clear past precedent. *See McCarter*, 883 F.2d at 203–04 (law had been unsettled with respect to which state statute would apply); *Gatto*, 882 F.2d at 843 (same); *Hill*, 851 F.2d at 697 (same).

*But see Gruber*, 911 F.2d at 965–67 (law was settled with respect to state statute to be applied to particular type of § 10(b) claim). The Third Circuit's decisions are not applicable here because the law in the Seventh Circuit was much more settled prior to *Short* than was the law in the Third Circuit prior to *Data Access*.

actively); *In re VMS Securities Litigation,* No. 89 C 9448, 1990 WL 166661 (N.D. Ill. Oct. 19, 1990) (Conlon, J.) (slip op. at 24–27) (same). In this case, plaintiffs waited a year before filing the lawsuit, during which time their attorney engaged in settlement negotiations and conducted a factual investigation.[13] In light of the consistent precedent in this circuit mandating application of the Illinois statute of limitations, plaintiffs and other litigants were justified in continuing to rely on that provision. "The adoption of a statute of limitations is no less legislative when done by a court than when done by a legislature, and until the handwriting on the wall is unmistakable plaintiffs should be able to rely on the previous limitations period." *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1309–10 (7th Cir.1989). The Court finds that the third requirement for non-retroactivity is satisfied.

Because all three of the *Chevron* factors are satisfied, the *Short* holding shall be applied prospectively only and will not govern this lawsuit. *See also Kayne v. Painewebber Inc.,* 703 F.Supp. 1334, 1343–44 (N.D.Ill.1989) (Duff, J.) (adopting *Data Access* but refusing to apply it retroactively). *Cf. Nesbit v. McNeal,* 896 F.2d 380, 384 (9th Cir.1990) (declining to adopt *Data Access* but noting that court would be "most reluctant" to apply *Data Access* retroactively).

### 2. Application of Illinois Statute of Limitations

Having determined that *Short* shall not be applied retroactively, the Court must apply the limitations period from the Illinois blue sky law. As noted above, the Illinois statute of limitations was amended effective January 1, 1986. Ordinarily, therefore, the Court would first have to determine whether the statute applies in its former or its amended version. In this case, where fraudulent sales allegedly began in 1982 and continued through 1988, the amended statute clearly applies to certain sales. As will be shown below, however, it is ultimately unnecessary to determine whether the amended statute applies to all of the sales.

"Where a limitation period has not expired prior to amendment, the amendatory act controls all actions and remedies not previously barred." *Arnold Engineering, Inc. v. Industrial Comm'n,* 72 Ill.2d 161, 165, 20 Ill.Dec. 573, 575, 380 N.E.2d 782, 784 (1978), *quoted in Frank E. Basil,* 713 F.Supp. at 1200. Accordingly, determination of which securities sales are governed by the amended blue sky provision necessitates an inquiry into "whether the pre–1986 version of ¶ 137.13D would have cut off the plaintiffs' '34 Act claims prior to January 1, 1986." *Frank E. Basil,* 713 F.Supp. at 1200.[14]

Sales after January 1, 1986, are governed by the amended statute. Sales which occurred from 1982 through the end of 1985 are governed by the amended statute if they were alive as of January 1, 1986. Sales which occurred between during 1983, 1984 and 1985 were alive as of

---

**13.** The *Short* decision's arrival during the briefing of the motion to dismiss occasioned a number of additional submissions by the parties. The Court granted leave to file those submissions. One of the submissions was an affidavit by plaintiffs' lead counsel attesting to his reliance on the state of the law prior to *Short* and stating that during the year before he filed the complaint he pursued settlement negotiations and conducted a factual investigation. The Court granted leave to file the affidavit but stated that defendants' objections to the affidavit would be considered along with the merits. Defendants assert that because this is a motion to dismiss, plaintiffs may not submit factual evidence. Because the issue of retroactivity, to which reliance is relevant, is collateral to the merits of the complaint, the Court rejects defen-

dants' argument and finds that submission of the affidavit is appropriate. However, the Court also affirms that it would reach the same decision in the absence of the affidavit.

**14.** *See also Davenport,* 903 F.2d at 1141 n. 5 (citations omitted):

> In Illinois it is well settled that absent an express statement from the legislature, amendments to statutes will not be applied retroactively. In addition Illinois law provides generally that an amendment extending a statute of limitations cannot act retroactively to revive a cause of action which has already been barred by the original limitations period.

January 1, 1986, because the old statute provided a three-year limitations period, and therefore they are now governed by the amended statute. Which statute governs the 1982 sales, however, depends on whether the preamendment statute permitted tolling—a question as to which there is some dispute.[15] If the pre-amendment statute did not allow tolling, then sales occurring during 1982 were stale as of January 1, 1986, are accordingly governed by the old statute, and are thus untimely. If the pre-amendment statute did allow tolling, then the 1982 sales remained alive as of January 1, 1986, and are now governed by the amended statute. However, because the 1982 sales are beyond the five-year statute of repose contained in the amended statute, they are barred even if they are governed by the new statute, unless the new statute's five-year provision is subject to tolling.

■■■■ The Court thus proceeds to consider whether the five-year statute of repose in ¶ 137.13D may be tolled beyond the five years when it is borrowed for § 10(b) actions to which *Short* does not apply. Initially, it is clear from the language of the statute itself that it may not be extended by state tolling principles. *See Davenport*, 903 F.2d at 1143 ("under the new statute, regardless of tolling, no action could be brought after five years from the date of sale"). The more difficult question is whether the five-year limit may be extended by federal tolling principles. Courts which have addressed this issue—with respect to both the Illinois statute in particu-

lar and other state statutes of repose—have reached differing conclusions.

Cases which have found or suggested that borrowed statutes of repose are subject to federal tolling principles include *United California Bank v. Salik*, 481 F.2d 1012, 1015 (9th Cir.1973) (suggesting that if statute of repose were borrowed for § 10(b) actions, it could be extended by federal tolling), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); *Pucci*, 711 F.Supp. at 928 (amended ¶ 137.13D can be extended by federal tolling); *Geeting v. Prizant*, 664 F.Supp. 343, 349–50 (N.D.Ill. 1987) (Aspen, J.) (same); and *Kirschner v. Cable/Tel Corp.*, 576 F.Supp. 234, 240 (E.D.Pa.1983) (Pennsylvania statute of repose borrowed for § 10(b) actions could be extended by federal tolling). These courts reasoned that a statute of repose is inconsistent with the federal policy that "a statute of limitations shall not run until the fraud is, or should be, discovered." *Salik*, 481 F.2d at 1015; *see also Pucci*, 711 F.Supp. at 928; *Kirschner*, 576 F.Supp. at 240. They viewed a strict cut-off even in the absence of any reason to be aware of the fraud as unduly harsh and as contrary to that federal policy. *Kirschner*, 576 F.Supp. at 240. Furthermore, a statute of repose would violate the "federal policy favor[ing] the broad availability of § 10(b) to redress securities fraud." *Pucci*, 711 F.Supp. at 928. In *Geeting*, the court stated that extending a cause of action beyond the repose period is no different than ap-

---

**15.** The prevailing view is that the old statute was subject to federal or state tolling principles, or both. *See, e.g., Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 586 n. 3 (both federal and state tolling principles apply); *Norris*, 818 F.2d at 1331 (suggesting that only state tolling principles apply); *Teamsters*, 815 F.2d at 456 (applying federal tolling principles); *Suslick*, 741 F.2d at 1004–06 (both federal and state tolling principles apply); *Pucci*, 711 F.Supp. at 922–23 (old statute subject to tolling because in Illinois, tolling applies unless statute expressly provides otherwise). However, in recent opinions the Seventh Circuit has hinted that the old statute was not subject to tolling by Illinois law—with the possible implication (if the *Norris* suggestion were adopted) that the old statute was not subject to any tolling at all. *See Davenport*, 903

F.2d at 1143; *Norris*, 818 F.2d at 1333–34 n. *. These opinions emphasized that the Interpretive Comments for the amended statute suggested a desire to expand the prior limitations period and that "[h]eretofore, the three-year statute of limitations could be an absolute bar to an action even if its discovery was not reasonable or subverted." The Seventh Circuit did not expressly consider the possibility that this comment was not meant to restate the original legislative intent but rather expressed concern that the original statute could be misinterpreted. *See also Zahorik v. Smith Barney, Harris Upham & Co.*, 664 F.Supp. 309, 312 (N.D.Ill.1987) (Aspen, J.) (rejecting argument, based on the Interpretive Comments, that old statute did not allow tolling).

plying tolling principles to a statute of limitations, for in both instances the policies of federal securities law override state legislature's determinations of appropriate limitations periods. 664 F.Supp. at 349. "Moreover, as between the state's interest in repose and federal concerns in addressing securities fraud, the latter must prevail since it is a federal cause of action brought in federal court which is at issue." *Id.* at 350.

Cases finding that federal tolling principles cannot extend a borrowed statute of repose include *Vosbikian v. Wasserstrom,* [1986–1987 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,709 at 93,449 (E.D.Pa.1986) (Pennsylvania statute of repose borrowed for federal securities claims could not be extended by federal tolling), and *Morley v. Cohen,* 610 F.Supp. 798, 820 (D.Md.1985) (Maryland statute of repose borrowed for federal securities claims could not be extended by federal tolling).[16] The *Vosbikian* court reasoned that to adopt only the statute of limitation, without adopting the statute of repose, would be not to apply the state statute, in contravention of the principle that the state statute must be applied. ¶ 92,709 at 93,452. In *Morley,* the court held that the similarity between the state statute of repose and the statute of repose contained in § 13 of the Securities Act of 1933 warranted interpretation of the state statute as containing an absolute outside limit on causes of action. 610 F.Supp. at 820.

In light of the *Short* decision, of which the courts in *Geeting* and *Pucci* did not have the benefit, this Court must agree with the approach articulated in *Morley.* *Short* made clear that federal policies concerning limitations of actions provide overriding guidance in § 10(b) actions. Furthermore, in *Short* the court borrowed a provision—§ 13 of the Securities Act of 1933—which itself contained a statute of repose. Thus contrary to the discussions in *Geeting* and *Pucci,* federal policy is not inconsistent with a statute of repose; rather, it supports a statute of repose. Guidance is also provided by the decision in *Norris,* which looked to the policies manifested by the federal statute of repose in deciding to read strictly any state tolling principles which were applied to federal securities claims. 818 F.2d at 1333. Based on the federal policy favoring an absolute outside time limit on private causes of action, the Court concludes that § 137.13(D)'s five-year statute of repose cannot be extended by federal tolling principles.[17]

Because the five-year statute of repose cannot be extended, the 1982 sales are barred even if they are covered by the new statute. As noted above, they are also barred if they are governed by the old statute. It is thus unnecessary to determine which version of the statute governs the 1982 sales. All sales from 1983 forward are governed by the new statute. Because the new statute contains an absolute five-year statute of repose, no claims

16. *See also Biggans v. Bache Halsey Stuart Shields,* 638 F.2d 605, 607–08 n. 3 (3d Cir.1980) (discussing but not deciding the issue).

17. The question might next arise whether this holding should be applied retroactively to cases which were brought before the *Short* case was decided. It could be argued that prior to *Short,* there was little indication in this Circuit that federal policies favoring a period of repose would be applied in § 10(b) actions. The Court does not accept this argument, however. In contrast to the prior law in this Circuit that ¶ 137.13(D) applied to § 10(b) actions, which this Court has held to have been clearly established precedent (*supra* at 1239–1240), there was no clear law that the five-year statute of repose could be extended by federal tolling principles.

As noted above, there was a split of authorities on this question. Although the only two cases from this jurisdiction of which the Court is aware favored equitable extension of the five-year period, those cases were recent, isolated district court cases which could not in themselves constitute the kind of clear precedent necessary to avoid retroactivity.

It is also worth noting that the only possible applications of this Court's holding that the five-year period may not be extended will be retroactive applications, because prospectively the federal limitations period established in *Short* will apply. Indeed, the issue with which this Court has grappled will arise only in those relatively few cases which arise in the window between Illinois' amendment of ¶ 137.13(D) and the Seventh Circuit's decision in *Short.*

based on sales prior to May 4, 1985, survive.[18]

The question next arises whether plaintiff has adequately pled a basis for tolling the three-year statute of limitations, thus gaining the advantage of the five-year statute of repose. In *Cange v. Stotler and Co., Inc.,* 826 F.2d 581, 586 n. 3 (7th Cir. 1987), the court held that both federal and state tolling principles apply, but in light of *Short,* state tolling principles are unlikely to remain applicable in § 10(b) actions. In any event, the Court has already held that plaintiffs have satisfied the requirements for tolling under Illinois law.

 Under federal common law, there are two instances where tolling of a statute of limitations is justified. The first occurs where the defendant does nothing to conceal the fraud but plaintiff nonetheless fails to discover it despite the exercise of due diligence. *Davenport,* 903 F.2d at 1142. The second occurs where the plaintiff fails to discover the fraud, even though the plaintiff may not have exercised due diligence, because the defendant took additional affirmative steps to conceal the fraud. *Id.* Thus the federal tolling principles require examination of the same factors relevant under Illinois law, but in the disjunctive rather than the conjunctive. In holding that plaintiffs have satisfied the requirements of tolling under state law, therefore, the Court has necessarily held that plaintiffs have adequately pled a basis

for tolling under federal law. With respect to fraudulent concealment, it is also worth noting that a plaintiff need only allege a continuing scheme to defraud the plaintiffs. *Tomera v. Galt,* 511 F.2d 504, 509 (7th Cir.1975). *See also Frank E. Basil,* 713 F.Supp. at 1201 (adding that failure to allege how the misrepresentations prevented discovery of inaccuracies was not fatal to complaint at stage of motion to dismiss). In *Tomera,* the court held that for purposes of surviving a motion to dismiss, the following allegation sufficed to plead such a continuing scheme:

> [D]uring the period commencing on or about January 1, 1968 and continuing to the present, the defendants herein engaged in a continuing scheme and artifice to defraud investors, including plaintiffs, in connection with the purchase, solicitation, offer and sale of the unregistered securities as aforesaid, in further violation of Section 10–b [10(b)] of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission promulgated thereunder.

511 F.2d at 509–10. *See also Suslick,* 741 F.2d at 1004. In this case, plaintiffs have pled a basis for tolling by alleging that defendants engaged in a series of misrepresentations which continued through February of 1988 and which caused plaintiffs to be unable to discover the fraud until May of 1989. (Complaint ¶¶ 14, 19.) Fraudu-

---

**18.** In *Pucci,* the court suggested that all sales which survived as of January 1, 1986—the time the amended ¶ 137.13(D) became effective—had the benefit of a full five-year statute of repose beginning on January 1, 1986 rather than merely five years from the date of the sale:

> In [*Mega v. Holy Cross Hospital,* 111 Ill.2d 416, 95 Ill.Dec. 812, 490 N.E.2d 665 (1986), and *Costello v. Unarco Industries, Inc.,* 111 Ill.2d 476, 95 Ill.Dec. 822, 490 N.E.2d 675 (1986)], the Court established a rule that where a statute of repose replaces a statute of limitations, a plaintiff whose cause of action would not have been barred under the limitations statute has from the effective date of the amendment until the expiration of the repose period to file his lawsuit. *Costello,* 111 Ill.2d at 486, 95 Ill.Dec. 822, 490 N.E.2d 675 (Clark, C.J., specially concurring). Thus, where a five-year repose period supersedes a limitations period, the plaintiff has five years from

the effective date of the former to bring his suit.

711 F.Supp. at 924–25. This Court believes that the above passage is based on a misreading of *Mega* and *Costello,* which interpreted the established principle that where a new statute shortens the limitation period, a plaintiff whose cause of action arose before the new statute will be allowed a reasonable period of time to bring her action. The Illinois Supreme Court concluded that such a reasonable period cannot exceed the entire period of a newly adopted statute of repose. *See Mega,* 111 Ill.2d at 421–22, 95 Ill.Dec. at 814–15, 490 N.E.2d at 667–68. Justice Clark's view that "implicitly this opinion holds that the eight-year period of repose in the statute is the reasonable time period," *Costello,* 111 Ill.2d at 486, 95 Ill.Dec. at 827, 490 N.E.2d at 680, is merely one justice's interpretation of an opinion in which he did not. join.

lent concealment tolls the limitations period until the plaintiff actually discovers the fraud. *Suslick*, 741 F.2d at 1004; *Tomera*, 511 F.2d at 510. Because plaintiffs filed their complaint one year after the discovery, the complaint is timely with respect to all sales which occurred during the five years prior to the complaint—i.e., all sales occurring since May 4, 1985.

### C. Count VI

Defendants also contend that portions of plaintiffs' claim under the Illinois Securities Act are barred by the statute of limitations in ¶ 137.13(D). Having emerged from the labyrinthine excursion through the limitations issues arising in connection with the federal securities claim, the Court's task with respect to the state claim is simple. Because the § 10(b) analysis depended on the state limitations period, the outcome is the same; plaintiff's claims are timely only as to sales which occurred after May 4, 1985. Accordingly, with respect to Count VI, the statute of limitations provides an alternative ground for dismissal of claims arising from sales occurring prior to that date.

### IX. CONCLUSION

For the reasons stated above, Count VI is dismissed. All claims arising from sales occurring prior to May 4, 1985 are also dismissed. Plaintiff is ordered to provide a more definite statement concerning the allegations as to each defendant. In all other respects, defendants' motion to dismiss is denied.